## ZURICH GENERAL ACCIDENT & LIABILITY INS. CO., Limited, v. LEE.

### No. 3558.

Court of Civil Appeals of Texas. Beaumont.

Dec. 20, 1939.

Rehearing Denied Jan. 13, 1940.

John G. Tucker and Orgain, Carroll & Bell, all of Beaumont, for appellant.

W. T. McNeill, of Beaumont, for appellee.

O'QUINN, Justice.

This is a workman's compensation suit. Appellee, J. M. Lee, was the employee; the Pure Oil Company the employer; and appellant, Zurich General Accident & Liability Insurance Company, Ltd., the compensation insurance carrier. On May 20, 1936, while engaged in the course of his employment as an employee of Pure Oil Company, appellee received an injury for which he claimed compensation. He filed his claim before the Industrial Accident Board on August 23, 1938. On October 29, 1938, the board made its final ruling and award, denying compensation, and appellee duly gave notice that he would not abide said award, and duly filed this suit in the district court of Jefferson County, Texas, to set aside said award, and to recover compensation in the sum of $2,666.-66, or in the alternative that he have judgment for whatever character and sum of compensation to which he might show himself entitled.

Appellant answered by general demurrer, several special exceptions, general denial, and by special sworn denial to the effect that appellee had failed to file his claim for compensation with the Industrial Accident Board within six months of the date of the injury as required by law, and that having wholly failed to file his said claim as required by law, he was not entitled to recover compensation.

At the close of the evidence, appellant moved for an instructed verdict, which was refused. The case was then tried to a jury upon special issues upon the answers to which judgment was rendered for appellee that he recover compensation for 100 weeks (loss of eye) amounting to $1,726.20 in equal monthly installments of $17.26 beginning January 25, 1939, and continuing weekly until said sum was fully paid, unpaid weekly installments to bear six per cent interest from their due date. Motion for a new trial was overruled and appellant brings this appeal.

There is no question as to appellee being at the time of his injury an employee of Pure Oil Company, nor that he was covered by compensation insurance carried by appellant, nor that he was accidentally injured on May 20, 1936, by a piece of iron pipe ¾ inch in diameter and some 20 feet long falling from a scaffold some 12 or 14 feet high striking him in the face on or over the left eye. The jury found that the injury resulted in the loss of the sight of the eye, and that such loss of vision was permanent.

Appellant's first three assignments of error assert, in effect, that appellee failed to show good cause for his failure to file his claim for compensation with the Industrial Accident Board within six months after receiving his injury, and, therefore, the court erred in refusing its motion for an instructed verdict.

Appellee's injury occurred on May 20, 1936. He filed his claim for compensation with the Industrial Accident Board on August 23, 1938. The statute, art. 8307, Sec. 4a, R.S.1925, requires that claims for compensation shall be filed with the board within six months after the occurrence of the injury, but provides that for good cause shown the board may, in meritorious cases, waive strict compliance with the filing requirement. Appellee alleged good cause for not filing his claim within six months after the injury, and continuously up to the filing on August 23, 1938, and offered evidence to show same.

Appellee was an employee of the Pure Oil Company for some 13 years. He continued to work for the company after receiving his injury on May 20, 1936, up until about June or July, 1938, when he was laid off. He filed his claim with the board on August 23, 1938. It was denied by the

board on October 29, 1938. The case was tried on appeal in the district court of Jefferson County, January 24, 1939.

Briefly, the record reflects that immediately after appellee received his injury he was taken to Dr. Gardner, a company physician, by Mr. Park, safety first man at the Pure Oil plant. Dr. Gardner dressed the wound on appellee's face and eye. About June 5, 1936, appellee again went to Dr. Gardner and complained of his eye giving him trouble. Dr. Gardner examined his eye and told him that he did not think the blow by the falling pipe was the cause of the trouble, but sent appellee to Dr. Lyons, an eye specialist. Dr. Lyons, also employed by the oil company, carefully examined and tested appellee's eye on June 5th, 6th, and 10th, and told him that the blow was not the cause of his eye trouble. This was within less than three weeks after the accident. He said that after the accident the vision of his eye seemed "just kind of foggy"; that the doctors told him the blow did not cause the injury to his eye, and he had hoped it would clear up. He testified that his eye continued to give him trouble and seemed to grow worse, and that he still thought that the blow was the cause of the trouble to his eye. That about six months after he had seen Dr. Gardner and Dr. Lyons the last time, his eye was still getting worse and he went to see Dr. Vaughn of Port Arthur, who was also an eye specialist, and had him to examine his eye. That Dr. Vaughn gave his eye a careful examination and said it was too late to do anything for it because it was too far gone; that the blow was not the cause of the eye trouble, but that his teeth were—"He said my teeth had put my eye out." That he did not doubt Dr. Vaughn's statement for a while, but he got to "figuring around and figured that it might be his teeth" causing the trouble, and so some eight or nine months after the accident he went to see Dr. Hall, a dentist, and had him to examine his teeth; that he went to see Dr. Hall twice, the last time some six months before the case was tried, and that Dr. Hall told him that his teeth had nothing to do with his eye trouble. He further testified that some six or eight weeks before the trial of the case, still believing that the blow of the iron pipe over his eye was the cause of the loss of vision in the eye, and that he was entitled to compensation for the injury to and the loss of vision in the eye, he employed counsel to represent him in the matter, and was told by his counsel that he would have to file a claim for compensation with the Industrial Accident Board, which he had not known before, and that his claim for compensation was immediately prepared and filed. He further testified that from the time of the injury until he was laid off, some two years, or more, he never lost a day, nor a day's pay, and was paid the same for every day as he received before the injury. Still he said that all the time he believed that the injury to his eye was caused by the blow of the falling pipe, and that he was entitled to compensation. The gist of his claim of good cause for not filing his claim within six months after the accident was that the doctors told him that the blow did not cause his eye trouble, and that while he had confidence in what they said, all the time he believed the blow was the cause of his eye trouble, and he was waiting to file the claim when he could prove it. When he employed counsel he was advised to consult Dr. Hendry of Beaumont, an eye specialist, and he did so and was told by Dr. Hendry that, in his opinion, the blow caused the injury to the eye.

The question of good cause was submitted to the jury in a special issue, and was answered in favor of appellee. We think that he has shown good cause for not filing his claim for compensation with the Industrial Accident Board within six months after the accident by which he was injured on May 20, 1936. The doctors, three of them, Dr. Gardner, a general practitioner, and Dr. Lyons, an eye specialist, in three weeks after the happening of the accident, and after inspecting the eye three times, told appellee that his eye trouble was not caused by the blow; Dr. Vaughn, an eye specialist, and a doctor of his own choosing, after carefully examining and testing his eye, told him that the blow did not cause the trouble to his eye, but that his teeth were the cause, and then Dr. Hall, a dentist, told him that his teeth had nothing to do with his eye trouble. All this time, covering nearly two years, his eye was constantly growing worse, he still believed that the blow was the cause of the eye losing its vision, and finally, after the loss of the vision in his eye, he employed a lawyer to protect him in what he believed to be his right to compensation, and was advised to consult Dr. Hendry of Beaumont, an eye specialist, who told him that, in his opinion, the blow did cause the damage to his eye, and his claim for compen-

sation was immediately filed. While there was considerable delay, yet we think, under all the facts and circumstances, appellee exercised reasonable diligence in prosecuting his investigations and making claim to the board. Furthermore, under the law, as we understand it, there was no necessity for filing his claim until he had suffered the loss of the sight of his eye, which was not until some time just prior to filing of the claim—less than six months. As was said by Judge Hickman, Chief Justice of the Eastland Court of Civil Appeals, now a member of the Commission of Appeals, in Texas Employers' Ins. Ass'n v. Clark, Tex.Civ.App., 23 S.W.2d 405, 408, "Compensation is not provided for pain and suffering, but for loss of wages, and there would arise no necessity for giving notice or filing a claim so long as the employee lost no time from his work, but believed his injuries were trivial." Application for writ was dismissed. Here appellee said that after the accident the vision of his eye was just kind of foggy; that the doctors told him the blow did not cause the eye trouble; that he had confidence in what they said, but as his eye continued to get worse he all the time believed the blow did cause his eye trouble. He returned to work about the eighth day after the accident and continued to work—never lost a day or a day's pay for nearly or about two years. He testified that all that time he was having trouble with his eye and that it gradually got worse all the time; that while he had confidence in the doctors who told him that the blow did not cause the eye injury, still he believed that it did for he had never had any trouble with either of his eyes before, and thought it must have been the cause. He continued to seek expert medical advice hoping to find the truth of the matter and finally when he realized that he had lost the sight of his eye he waited no longer, but employed counsel to handle the matter. After he had done so he went to see Dr. Hendry, an eye specialist, and Dr. Hendry, after carefully examining the eye told him that, in his opinion, the blow caused the injury. We think the jury's finding of good cause has ample support in the evidence. The assignments are overruled.

What we have said disposes of the fourth assignment.

We overrule assignments five and six to the effect that the evidence did not support the finding that the blow above appellee's eye caused the loss of vision in the eye. The finding is amply supported by the record.

Assignments eight and nine complain that the court erred in entering judgment in favor of appellee for compensation for 100 weeks commencing January 25, 1939, because there was no pleading upon which such judgment could be based, and because there was no finding by the jury to support the judgment. These assignments are overruled. On January 16, 1939, appellee filed his Second amended original petition in which he alleged " * * *, and that said blow produced a fracture of the skull and caused a hemorrhage around the optic nerve of the left eye and a clot of blood to form on the nerves leading to said eye and said blow has cut, bruised and injured the nerves and tissues of the eye all of which have thereby caused plaintiff's vision in his left eye to become gradually impaired and lessened until now his eyesight in said eye is practically gone." This was an allegation that on the date of the filing of the amended pleading, to-wit: January 16, 1939, the sight of the eye was lost. The pleading as to the time alleged "Now" and this was the date of January 16, 1939. When given the intendments to which the petition was entitled the allegation as to when the eye became worthless in vision was on January 16, 1939. Also, there was no special issue given or requested as to the date when the sight of the eye became a total loss, and therefore the issue was waived and the court was authorized to make such finding in support of its judgment, there being evidence to support such finding. Article 2190, R.S.1925, Vernon's Ann.Civ.St. art. 2190. There was no exception filed as to the sufficiency of the allegation in the amended petition. The verdict of the jury was received and filed on January 25, 1939, thus establishing appellee's loss of the eye.

What we have said disposes of assignments ten, eleven, twelve, thirteen, fourteen and fifteen.

We overrule appellant's assignments (16 and 17) complaining that the court erred in refusing to sustain its exceptions to the special issues submitting the question of "good cause" to the jury, the objections being that the issues were too general and did not confine the jury to the consideration of the grounds for "good cause" plead. The issues were sufficient and show no error.

We overrule all assignments (18 to 36) challenging certain findings of the jury as without evidence to support them. We think the record contains support for each of them.

From what we have said the judgment should be affirmed, and it is so ordered.

Affirmed.