## LAMBERT v. HOUSTON FIRE & CASUALTY INS. CO.

No. 4842.

Court of Civil Appeals of Texas. Beaumont.

July 2, 1953.

Rehearing Denied Sept. 16, 1953.

See also 254 S.W.2d 405.

692

Houston Thompson, Silsbee, for appellant.

Cecil, Keith & Mehaffy, Beaumont, for appellee.

WALKER, Justice.

This is a workman's compensation case. The appellant, C. R. Lambert, is the claimant. Appellee was the insurer, and the employer was the Gasoline Plant Construction Company. Lambert sued for compensation benefits for total and permanent disability, and as ground therefor alleged that his right eye was blinded by a cataract; and that his left eye had also been blinded by a cataract but had had ten percent of its vision restored by an operation. He alleged that these cataracts were caused by a blow inflicted upon his eyes on June 9, 1948, by fragments of a block of asphalt which he was breaking into pieces. The cause was tried to the court with a jury, and at the close of claimant's evidence the trial court instructed the jury to return a verdict in behalf of the defendant. Judgment was rendered that claimant take nothing, and from this he has appealed.

The questions raised by claimant's Points of Error are: (1) whether there is evidence that the cataracts were caused by the incident of June 9, 1948, and (2) whether there was "good cause" for the delay which occurred in the filing of the claim for compensation. This claim was filed on January 25, 1950, a few days more than twelve months after the expiration of the period allowed by Section 4a of Art. 8307, R.S. 1925, as amended, Vernon's Ann.Civ.St. art. 8307, § 4a.

Opinion

(1) The issue of causation: the evidence pertaining to this issue which would support a finding in behalf of the claimant is collected in our supplemental findings. There was evidence that claimant sustained a blow upon his eyes on June 9, 1948, as he alleged; that the blow upon the left eye was much heavier than that upon the right eye; that both eyes swelled and were inflamed and that claimant bandaged the left eye and kept it bandaged for several days; that after several days the apparent injury seemed to have healed; that after a relatively short period (20 or 30 or 40 days) the power of vision in the left eye began to fail; that this loss of vision continued to progress and proved to be the result of a cataract; that many months after the incident of June 9, 1948, apparently a year or more, the power of vision in the right eye began to fail and a cataract developed in the right eye. The only expert witness was Dr. Kaplan; he did not express an opinion about the cause of the claimant's cataracts, but he did testify about causes and development of cataracts. Other evidence is mentioned below.

We have concluded that the evidence was too indefinite to raise an issue for the jury, whether the blow inflicted upon the right eye on June 9, 1948, caused the cataract in that eye. The blow on the right eye was relatively light; the cataract in the right eye did not begin to develop until many months after the eye sustained the blow; and claimant's age, according to Dr. Kaplan, could have caused the cataract. The circumstances did not sufficiently negative this possible cause.

We have also concluded that the evidence did raise an issue for the jury, whether the blow caused the cataract to develop in the *left* eye. Before the incident of June 9, 1948, the claimant had good vision in both eyes. The blow upon the left eye was a relatively heavy one. The cat-

aract in the left eye began to develop very soon after the blow, just as it normally would if caused by the blow. And Dr. Kaplan said that a blow upon the front of the eye, whether it penetrated the lens or not, *could* cause a cataract.

There was evidence negativing other possible causes. It does not appear that claimant received any other injury to his eye; and he did say that he got nothing else in them after the incident of June 9, 1948. He said also that he had gotten nothing in his eye "that I know of" before the incident of June 9, 1948. The only other causes of cataracts which Dr. Kaplan mentioned were *disease* and *age*. The jury could infer from the circumstances that disease did not cause the cataract in the left eye. These circumstances were: the previous good condition of the claimant's eye; and the work which he did for the Gasoline Plant Construction Company before the incident of June 9, 1948, and for that and subsequent employers during the period when the cataract began to develop and progressed. As for *age*, the circumstances also afforded some ground for discounting this, too. These circumstances were, of course, mostly the ones which tended to prove that the blow caused the cataract, namely, the previous good condition of claimant's eye; and the fact that the cataract began so soon after the incident of June 9, 1948, as it normally would if caused by that incident. It would seem a remarkable coincidence that age, which had not affected the claimant's eyes before the blow, should begin to do so just at the time when the blow would do the same. To these circumstances mentioned should be added the fact that the cataract in the right eye (for which age was a possible cause mentioned in the proof) did not begin to develop until many months after the incident of June 9, 1948. It was unnecessary for Dr. Kaplan to express an opinion as to the cause of the cataract in the left eye. See: Pino v. Ozark Smelting & Mining Co., 35 N.M. 87, 290 P. 409; Oklahoma Woodchuck Zinc Lead Co. v. State Industrial Commission, 87 Okl. 263, 210 P. 923; Hartford Accident & Indemnity Co. v. Jones, 5 Cir., 80 F.2d 680; Brodtmann v. Zurich General Accident & Liability Ins. Co., Ltd., 5 Cir., 90 F.2d 1; Pacific Employers Ins. Co. v. Barnett, Tex.Civ.App., 230 S.W.2d 331.

(2) The issue of "good cause": This concerns only the left eye. As we have stated, claimant filed his claim on January 25, 1950, a few days more than a year after the expiration of the six month period prescribed by Art. 8307, Sec. 4a.

The "good cause" relied on by claimant seems to include two elements, namely, a belief that the injury was slight and a failure to attribute the loss of vision to the injury. The latter element seems to have been more prominent in his mind, and was caused more by the delayed development of a cataract in his *right* eye than by the original character of the injury. Both eyes were struck and injured, but only one failed—until the latter part of 1949.

The testimony concerning the issue of "good cause" is collected in our supplemental findings. We construe it as showing that claimant failed to prove that he had good cause for delaying the filing of his claim so long. He was an employee of Brown & Root in December, 1948, and was given a physical examination before his application for employment was accepted. This included a test of his eyesight, and he passed the test by tricking the examiner; he was given a card to put over the eye not being tested, and he succeeded in keeping this card over his left eye and in passing the test with the right eye. At this time he knew that his left eye was in bad condition, he remembered the injury of June 9, 1948, he associated it with the loss of vision in his left eye as a cause of that loss, and he was inclined to attribute it to that injury. He also had a conversation with Vaughn, who was his foreman at the time of the injury and also when he worked for Brown & Root, and Vaughn advised him to consult a doctor or a lawyer and, according to claimant, to file a claim for compensation. At that time the claimant and Vaughn were considering the injury of June 9, 1948, as a cause of the loss of vision in the left eye, and claimant at this period sometimes thought that the injury had caused his loss

of vision. Vaughn was an old friend of claimant's and knew that it was necessary to file a claim for compensation within six months.

This conversation with Vaughn probably occurred after claimant was examined by Brown & Root, and the latest date for it fixed by the proof is six or eight months after the injury. Thus at that time the claimant lacked only the opinion of a physician to complete his information about the cause of his loss of vision, and he had every reason to consult a physician and determine his rights.

The claimant eventually did consult a physician. In fact, he said that he consulted several before he finally talked with Dr. Caldwell on January 10, 1950, a year and a half after the injury, and then decided that the injury caused his loss of vision. He learned from Dr. Caldwell, he said, that a blow could cause a cataract and that a cataract not only existed in his left eye but was developing in his right eye. He said that a physician named Tennison had sent him to Dr. Caldwell but had told him that he did not think that a blow could cause a cataract.

However, claimant's testimony fixes the times of his consultation with Tennison and others whom he consulted before Dr. Caldwell either many months after the examination by Brown & Root and the conversation with Vaughn, or else leaves the times of those consultations uncertain. The other persons referred to, an optometrist and a physician, could have told the claimant what the condition of his eyes was; he never said what he discussed with the optometrist or the physician, but he was inclined to believe that he had *not* discussed his eyes with the physician. If the times of the consultations with Tennison and these two were fixed as stated, the claimant did not exercise legal diligence. There simply is no reason in proof why claimant should have delayed for any material time to determine and enforce his rights after he had acquired the information and the advice and had formed the opinions about the cause of his loss of vision which we have referred to. On the other hand, if the times of the consultations with Tennison

and the optometrist and the physician are not fixed as stated, then the claimant has failed to prove that he did exercise diligence.

That Tennison misled him when claimant finally did consult Tennison does not excuse any failure to use diligence prior to the time he talked with Tennison. On his own showing (he said Tennison sent him to Caldwell, a specialist) diligence would have resulted in his claim being filed earlier then it was filed.

We have, so far, assumed that claimant was under the necessity of using diligence to file his claim.

However, claimant argues that the time for filing his claim did not begin to run until he had lost the sight of both eyes. He makes this argument with reference to the claim for total and permanent disability which his petition asserted; it is his position that no claim for total and permanent disability accrued until his blindness was complete. Nevertheless, the argument has some bearing on his right to compensation benefits for the loss of sight in his left eye which, under Sec. 12 of Art. 8306, R.S. 1925, as amended, Vernon's Ann.Civ.St. art. 8306, § 12, is a specific injury. He quotes, in support of his position, the following part of this court's opinion in Zurich General Accident & Liability Ins. Co. v. Lee, Tex.Civ.App., 135 S.W.2d 505, at page 508: "Furthermore, under the law, as we understand it, there was no necessity for filing his claim until he had suffered the loss of the sight of his eye, which was not until some time just prior to filing of the claim—less than six months."

The time for filing claim, both for a general injury and for the specific injuries listed in Sec. 12 of Art. 8306 is prescribed by Sec. 4a of Art. 8307, R.S.1925, Vernon's Ann.Civ.St. arts. 8306, § 12, 8307, § 4a, and under the decisions in Jones v. Texas Employers Ins. Ass'n, 128 Tex. 437, 99 S.W.2d 903; Indemnity Ins. Co. v. Williams, 129 Tex. 51, 99 S.W.2d 905; New Amsterdam Casualty Co. v. Chamness, Tex.Civ.App., 63 S.W.2d 1058, and other decisions cited in this opinion, this period of time (six months) begins with the date of the injury

and not with the date when disability accrues. The date of the claimant's injury was June 9, 1948; and the six months allowed him for filing claim ran from this date, whether for a total and permanent disability caused by the loss of sight in both eyes or for the specific injury which loss of sight in one eye is.

However, under the decision of Jones v. Texas Employers Ins. Ass'n, the delayed development of a disability may be "good cause" for not filing claim within the six months, and the application of this rule to the case under review is now to be considered. Jones v. Texas Employers Ins. Ass'n is not, itself, in point on the facts. The opinion of the Court of Civil Appeals, 70 S.W.2d 791, at page 792 shows that in that case the jury found not only that the claimant had sustained total and permanent disability on a certain date, namely, March 8, 1930, but also that his incapacity to work commenced on that date and that he first *realized* on that date that he had sustained incapacity to work. These findings are wholly different from the facts which were proved in the case now under review.

The first question suggested by the holding on "good cause" made in Jones v. Texas Employers Ins. Ass'n is whether claimant had sustained any compensable disability by the end of the six or eight month period after his injury when he had acquired the information about his loss of sight, its cause, and his rights (or his situation) which we have summarized above. We are considering now only his right to benefits for loss of vision in the left eye. Our holding that claimant failed to prove his loss of vision in his right eye to be a result of his injury settles against the claimant his claim for benefits for total and permanent disability.

That claimant had sustained a compensable injury by the end of this six or eight month period, under our holding that he proved the loss of vision in the left eye to be a result of his injury, is established by the decisions in Texas Employers Ins. Ass'n v. Patterson, 144 Tex. 573, 192 S.W. 2d 255; Fidelity Union Casualty Co. v. Munday, Tex.Com.App., 44 S.W.2d 926; and Great American Indemnity Co. v.

Stultz, Tex.Civ.App., 56 S.W.2d 200. The blindness of the left eye which finally resulted was, under the claimant's proof, only a development and worsening of this very disability.

The next question is, what effect this conclusion has upon the matter of "good cause"; and such decisions as we have seen require that claimant have exercised diligence to file his claim although his loss of vision in his left eye did not become complete until a date much later than the accrual of the compensable disability just mentioned.

■ Concerning general injuries it was said in Maryland Casualty Co. v. Perkins, Tex.Civ.App., 153 S.W.2d 647, at page 648: "In our opinion, when an Employee receives an injury which results in no compensable disability until after six months from the date of the injury, he has, as a matter of law, 'good cause' for not filing claim for compensation *until* some compensable disability has resulted." That he must exercise diligence to file his claim *after* compensable disability has resulted was held in Safety Casualty Co. v. Walls, Tex.Civ.App., 117 S.W.2d 879. Other circumstances, of course, may actually excuse a failure to file claim even though some compensable disability exists. Hawkins v. Safety Casualty Co., 146 Tex. 381, 207 S.W. 2d 370.

■ Concerning a specific injury provided for in Sec. 12 of Art. 8306 it has been held that under circumstances analagous to those proved in the case under review, the claimant must prove for "good cause" something other than the single fact that the development of the injury to a complete loss was delayed. See: Texas Employers Ins. Ass'n v. Whiteside, Tex. Civ.App., 77 S.W.2d 767; Fox v. Texas Employers' Ins. Ass'n, Tex.Civ.App., 94 S.W.2d 569. Such holdings necessarily imply, and in Fox v. Texas Employers' Ins. Ass'n it was held, that claimant must exercise diligence during the period of development to file his claim and that he can not invariably wait to do so until the progress and development of the consequences of the injury has ended.

Our conclusion, then, is that not later than six or eight months after his injury the claimant had sustained a compensable disability and was then under the necessity of exercising diligence to file claim for compensation; and this, as we have stated, he either did not do, or else he failed to prove that he did.

The language in Zurich General Accident & Liability Ins. Co. v. Lee, Tex.Civ. App., 135 S.W.2d 505, which we have quoted above was dicta and the cause did not reach the Supreme Court. We are not, therefore, bound by it, and we decline to apply it to the case under review.

These conclusions require that the judgment of the trial court be, and the same hereby is, affirmed.