**TEXAS EMPLOYERS' INSURANCE ASSOCIATION, Appellant,**

v.

**W. L. HAMILTON, Appellee.**

**No. 16942.**

Court of Civil Appeals of Texas.

Fort Worth.

June 28, 1968.

Rehearing Denied July 19, 1968.

Nelson, Sherrod, Carter & Oldham, and Stan Carter, Wichita Falls, for appellant.

Norman Whitlow and Kearby Peery, Wichita Falls, for appellee.

RENFRO, Associate Justice.

OPINION

From a judgment based on a jury verdict, defendant appealed.

In its first four points of error defendant contends there was no evidence to support the jury finding of total and permanent disability, or, that such finding was against the great weight of the evidence.

Deposition testimony of plaintiff taken August 22, 1967: He was injured on March 26, 1966, while lifting drill pipe for his employer, Junior Haney. He immediately felt pain in his back and legs. The back pain was just above or even with his belt line. His legs hurt all the way to the heels. He stayed at the site the remainder of the shift but did no work. The driller knew he was hurt. He went back to the site next day but was unable to work. On Monday, after the injury on Saturday, he went to the hospital. Dr. Purtell examined him. He stayed in the hospital 14 or 15 days. Dr. Purtell was his choice. Dr. Purtell called Dr. McGrath of Fort Worth to come to Saint Jo to perform surgery. Dr. Purtell dismissed him around January 1, 1967. Since the injury he has not worked at any job. He has been unable to work for drillers. He has about 6 or 8 acres of cultivated land where he grows watermelons and blackeyed peas for his own use. The rest of the land is used for grazing cattle. His 15 year old son does the heavy work. In fence building he drives the staples, his son digs the holes. He does a little plowing with a tractor. When he starts hurting he quits work. He has never since the operation, been able to do a day's work. He still hurts in back and legs. Physical therapy hurts him so bad he cannot follow through. He can drive a pickup to see about his place. Usually he cannot stay up more than two hours. He had never been hurt before. He had never had a prior operation. He has spent $4,200.00

since the operation. All was from saving except $800 he obtained from selling calves. He went to sixth grade in school, quit when he was fourteen. His jobs have been roustabout jobs around drilling operations.

As a witness at the trial he testified: When he "overdoes" or stays on his feet too long, his legs give way and he sometimes falls without warning. As a roughneck, ninety per cent of his work was lifting and carrying. He cannot now do work around a drilling rig, nor does he think he will ever be able to so work. If he could he "wouldn't be here today." His condition improved some following the operation, but reached his maximum recovery about six months following the operation. His back hurts when he does small chores around the place. The doctors never gave him a release to go back to work. He was in perfect health before the accident. His career has been "roustabouting" and farming.

He is fifty years of age. He has done nothing in his life except farm and work around the oil fields. He has applied for work at several places but has been unable to obtain employment. Before his injury he had never been to a doctor except for physicals and for a minor cut on his chin. Following the surgery he returned to the hospital several times for examinations but was not confined. In handling his cattle he has help of neighbors, his son and his wife. He went to Fort Worth to see Dr. McGrath in September or October following the operation. He has not seen him since until just before the trial. He went back to Dr. Purtell in the spring. Following the operation, "Well, I get along better. I learned how to handle myself. I am not saying that I—I believe I made it clear that after about six or seven months, but as far as the pain in my back and leg, I don't think it has got any better, but I have learned to handle myself where I don't make it hurt me. * * * Well, I wish I had a future. It is a pretty dark future when you can't lift 50 or 60 pounds without it hurting you, when manual labor is

all that you know, a sixth grade education. It is like I said awhile ago, there ain't many that would want me in their office." He has not tried to get certain jobs because they would not "let me lay down when my leg went to hurting." He would be willing to try practically any kind of job. He can drive his car to Fort Worth.

Mrs. Hamilton testified: She has been married to plaintiff for twenty-eight years. He never suffered any previous injury serious enough to cause him to lose work. He never had any trouble with his legs, back, arms or shoulders. Now he complains of his back and legs and takes frequent rest periods. He has trouble sitting up straight, as in church, or in chairs. He keeps her awake at night "kicking his leg and raising it up and down." Their son helps do the work.

Ancel Thurman was working with plaintiff on the occasion in question and saw plaintiff sustain a hurt while throwing a joint of 4½ inch drill pipe. Plaintiff remained on the job the rest of the shift and returned the next day, but there was not much to do and plaintiff "favored" his back.

One of plaintiff's attorneys testified and explained, apparently to the jury's satisfaction, why Dr. McGrath's evidence was not presented by plaintiff.

■ In determining defendant's no evidence points we have considered the evidence in the light most favorable to the jury's answers. In determining the point that the verdict is against the great weight of the evidence we have considered all the evidence, including the evidence against the verdict, as well as that upholding the verdict. Obviously, from the summary heretofore set out there was some evidence of probative force to uphold the finding of total and permanent disability.

After a careful study of the entire statement of facts, we have also concluded the verdict is not so against the great weight of the testimony as to be manifestly unjust.

■ Defendant argues earnestly that the evidence showing plaintiff's activities around his farm precludes a finding of total and permanent disability. Such activities, and plaintiff's explanations, constitute a part of the factual evidence which may and should be taken into consideration by the jury in answering the issues upon incapacity or disability, but do not, as a matter of law, preclude the award of compensation even for total and permanent disability. Texas General Indemnity Co. v. Hernandez, 388 S.W.2d 334 (Tex.Civ.App., 1965, no writ hist.); Trinity Universal Insurance Co. v. Scott, 342 S.W.2d 348 (Tex.Civ.App., 1961, ref., n. r. e.); Aetna Casualty and Surety Company v Curlee, 416 S.W.2d 890 (Tex.Civ.App., 1967, no writ hist.).

■ Defendant also makes much of the fact that plaintiff offered no medical evidence. Many cases have held that in some situations (and we hold this to be such a situation) it is not necessary to present physicians as witnesses in order to prove the extent of an injury. The jury may draw the inference of permanent disability from lay testimony. Hartford Accident & Indemnity Co. v. Ferguson, 417 S.W.2d 376 (Tex.Civ.App., 1967, ref., n. r. e.). On page 378 of the Ferguson case appears citation of several cases so holding. See also 63 Tex.Jur.2d, p. 455, § 429.

Points 1 through 4 are overruled.

In its sixth point defendant complains of an improper remark of plaintiff's attorney that defendant made a yearly profit of $18,000,000.00. The record shows that during voir dire examination defendant's attorney told the panel he could not tell them the effect of their answers if the jury found plaintiff to be seventy-five per cent disabled, nor the effect it would have on Junior Haney's (plaintiff's former employer) premiums. The court admonished the panel not to be concerned about the premiums on the policy. After additional comment between defendant's attorney and the court, plaintiff's attorney said, " * * *

he has tried to leave the impression that Texas Employers Insurance Association doesn't make a net profit every year of about $18,000,000.00, and * * *."

Thereupon, on his own motion, the alert and able trial judge instructed the jury not to consider that remark, and, rightly so, not to consider anything about the premiums.

■ The remark by plaintiff's attorney was entirely out of order and improper and we strongly disapprove of it, but in view of the circumstances under which it was made, and the prompt and decisive action of the court, we cannot hold that such remark was calculated to and probably did cause the rendition of an improper verdict and judgment. Texas Employers' Insurance Association v. Roberts, 281 S.W.2d 104 (Tex.Civ.App., 1955, no writ hist.).

In points nine and ten it is contended that it was error for plaintiff's attorney to tell the panel on voir dire that plaintiff would receive only 401 weeks compensation at the rate of $35.00 per week, and in reading that part of the pleadings and arguing same to the jury.

■ We have consistently held that it is better practice not to inform the jury of the amount of compensation and the duration of payments under the Workmen's Compensation Law. Argonaut Insurance Co. v. Titus, 347 S.W.2d 372 (Tex.Civ.App., 1961, no writ hist.); Texas Employers' Insurance Association v. Rubush, 337 S.W. 2d 501 (Tex.Civ.App., 1960, ref., n. r. e.); Hartford Accident & Indemnity Co. v. Ferguson, supra. We have held in each case, however, that such practice, in the absence of a showing of prejudice to the appellant, does not constitute reversible error. Defendant herein has failed to show reversible error. 63 Tex.Jur.2d, p. 639, § 511.

In its fifth, seventh and eighth points defendant contends it was reversible error for the court to allow plaintiff's attorney, in his argument to the jury, to: mislead the jury into believing plaintiff would get nothing unless they found plaintiff to be totally and permanently disabled; tell the jury not a drilling contractor in the area would hire plaintiff; tell the jury operations are not usually performed by osteopathic physicians.

The jury argument of all attorneys is before us in the statement of facts.

In our view, the argument did not attempt to lead the jury to believe that plaintiff would not get anything if the jury failed to find total and permanent disability. Defendant's attorney argued forcibly for a finding of partial disability. Plaintiff's attorney answered with an equally forceful argument for a finding of total disability. Plaintiff did a competent job of persuading the jury to find total disability, but we fail to see any deception.

■ The argument that no driller would hire plaintiff was a reasonable deduction from the evidence. The definition of total and permanent disability was in standard form and did not limit the jury's determination to whether or not plaintiff could again actually work with a driller. The argument was merely one phase of the contention that plaintiff could not perform the usual task of a workman.

■ The remark by plaintiff's attorney that operations were not usually performed by an osteopath was outside the record. The doctors who treated and operated on plaintiff were osteopaths, but they were doctors of his own choosing. Surely the complained of remark could not result in prejudice to defendant.

All points pertaining to jury arguments are overruled.

In its eleventh point defendant contends that the above alleged errors, cumulatively, were so prejudicial as to require a reversal.

■ Whether the argument influenced the verdict unfavorable to defendant is to be determined as a matter of our judgment in the light of the record as a whole. Southwestern Greyhound Lines v. Dickson, 149 Tex. 599, 236 S.W.2d 115 (1951).

Under Rules 434 and 503, Texas Rules of Civil Procedure, the rule of presumed error no longer prevails.

The true test in determining whether reversible error is present is the degree of prejudice flowing from the argument, whether the argument, considered in its proper setting, was reasonably calculated to cause such prejudice to the opposing litigant that a withdrawal by counsel or an instruction by the court, or both, could not eliminate the probability that it resulted in an improper verdict. Texas Employers' Ins. Ass'n v. Haywood, 153 Tex. 242, 266 S.W.2d 856 (1954). Rules 434 and 503.

The record before us does not, by evidence or inference, indicate that the jury was probably persuaded to answer the issues contrary to what they would have answered had the complained of arguments and the other remarks set out in the points of error not been made.

Affirmed.