**INSURANCE COMPANY OF NORTH AMERICA, Petitioner,**

v.

**W. A. KNETEN, Respondent.**

**No. B–1120.**

Supreme Court of Texas.

Jan. 22, 1969.

Rehearing Denied Feb. 19, 1969.

Branscomb, Gary, Thomasson & Hall, Gary Norton, Corpus Christi, for petitioner.

Butler, Schraub & Gandy, Roger Butler, Corpus Christi, for respondent.

REAVLEY, Justice.

This is a workmen's compensation case involving the problem of proof of causal connection between a job connected occurrence and the employee's disability. The occurrence here centers on an electric shock received by the employee, and his subsequent disability is due to a damaged heart.

On the strength of the testimony by the plaintiff and his treating doctor, the jury found that the injury received in the course of employment was a producing cause of total and permanent incapacity. The judgment entered on the verdict for plaintiff was upheld by the Court of Civil Appeals. 430 S.W.2d 565. We affirm.

For several days before his heart attack, W. A. Kneten had felt pain in the lower part of his chest which he attributed to indigestion or gas. After work on July 13 (1965), he even consulted his doctor. But on the following morning Kneten felt no pain and went to work as usual. Between 9 and 10 o'clock, while working in a hot and unventilated room, he was standing on a ladder drilling a hole into an aluminum window frame with an electric drill. A bare wire in the cord to the drill hit his wrist and he felt an electric shock go through his body. Kneten finished drilling the holes through the screen, but in the time that this took—"five or ten minutes" —he "began to feel bad and kept worsening". He finally went to Dr. Sloan's office between 11 and 12 o'clock, and as soon as the doctor examined him, an ambulance was called to take him to the hospital. He was there for 45 days and was an extremely sick man under an oxygen tent for four weeks; and he now suffers from an impaired heart.

Dr. Sloan testified that when he examined Kneten on July 13 he did not recognize any heart problem, but as of the time of trial Dr. Sloan was of the opinion that Kneten was predisposed to a heart attack on the 13th and was on that date suffering from coronary arteriosclerosis (hardening of the arteries). When he was asked his

opinion as to whether the occurrence on the ladder had precipitated Kneten's heart attack, Dr. Sloan replied that whereas he could not say without medical doubt, it was a "strong possibility". Pointing out that he did not know the nature of the electric shock received by his patient, he said that the shock "could have" been a contributing factor. Dr. Sloan was the only medical expert to testify.

The insurance company now contends that since the doctor failed to say that it was at least reasonably probable that the incident at work was a precipitating cause of the heart attack, the plaintiff thereby failed to discharge his burden of proof. The company cites Insurance Company of North America v. Myers, 411 S.W.2d 710 (Tex.Sup.1966) and Dotson v. Royal Indemnity Company, 427 S.W.2d 150 (Tex. Civ.App.1968, writ ref'd n. r. e.).

In *Myers* a bundle of clothes fell against the employee on July 1. On November 20 it was established that she had a malignant brain tumor, which caused her death the following May 21. No layman could relate this incident on the job to the tumor. The court said at 411 S.W.2d 714: "The nature of the injury suffered by Mrs. Myers and her death over ten months later from a pre-existing brain tumor, particularly in the light of her medical history, is not of sufficient probative force to support the inference of fact that the injury was a concurring, contributing or producing cause of her death." The doctor who testified for plaintiff could only say that the injury was a possible cause of the course of the cancer. Consequently, there was no evidence in that record that the whiplash neck injury was a producing cause of death from the pre-existing brain tumor. The plaintiffs failed to recover not so much for lack of a certain phrase of testimony from a medical expert as because the total proof was inadequate to support their claim. The court held that it would be sheer speculation, not resting on a preponderance of the evidence, to base a finding on nothing more than a mere possibility.

In *Dotson*, the plaintiff experienced chest pains while on the job on November 6. After several additional episodes during November and December, he suffered a coronary thrombosis at midnight on January 10. Those bare circumstances did not show probable causal connection between the work experience on November 6 and plaintiff's condition on January 10. In the absence of findings or opinion from an expert who would either be familiar with additional facts or trained to read further significance in the circumstances, there was no proof that the plaintiff sustained an injury or damage to his heart on November 6.

Just as there was no proof that an injury caused death or disability in *Myers* and *Dotson*, there was no proof that the plaintiff's back strain precipitated the advanced stage of syphilis in American Surety Company v. Semmons, 413 S.W.2d 732 (Tex.Civ.App.1967, writ ref'd n. r. e.), there was no proof that something blown into the eye of the plaintiff caused the tumor two years later in Scott v. Liberty Mutual Insurance Company, 204 S.W.2d 16 (Tex. Civ.App.1947, writ ref'd n. r. e.), and there was no proof that a blow on the head caused the employee's death of typhoid fever over a year later in Texas Employers' Insurance Association v. Burnett, 129 Tex. 407, 105 S.W.2d 200 (Tex.Sup.1937).

In the present case the fact finder had direct evidence of the occurrence on the job when the employee, while wet with sweat in the heat and effort of his work, was shocked throughout his body with an electrical current. The fact finder was told of the prompt onset of symptoms with the employee feeling bad within a few minutes and his distress progressing until he was in a critical state in the hospital within a few hours. The doctor testified that this distress was due to a heart attack and that the heart is still impaired. Further, the doctor testified that what happened on the job could precipitate a heart attack. With those facts given, it was not conjecture on the part of the jury to

conclude that the occurrence on the job was probably a cause of the attack and resulting disability.

Since the question is what precipitated *this attack at this time*, it requires no expert to decide the probabilities when the trier of fact is given evidence of prompt onset of the attack following an occurrence competent to affect adversely a defective heart. As in all of those cases where a back injury promptly follows a lifting strain, or a ruptured blood vessel or heart attack promptly follows exertion, though there is not definite proof of the mechanical process by which the physical structure of the body is damaged, under the circumstances it is reasonable to believe that what the employee did on the job precipitated physical failure. The courts have often allowed this finding and permitted recovery under the Texas Workmen's Compensation Law. Carter v. Travelers Insurance Company, 132 Tex. 288, 120 S.W.2d 581 (Tex.Sup.1938); Texas Employers' Insurance Association v. Hamilton, 430 S.W.2d 285 (Tex.Civ.App.1968, writ ref'd n. r. e.); Lambert v. Houston Fire & Casualty Ins. Co., 260 S.W.2d 691 (Tex.Civ.App.1953, writ ref'd n. r. e.).

However, we must now consider the effect of the doctor's testimony on this issue of causal connection. In doing so, we must recognize that there are areas for jury and judge to construe the testimony of the doctor. As the court said in the *Myers* opinion at 411 S.W.2d 713: "Reasonable probability * * * is determinable by consideration of the substance of the testimony of the expert witness and does not turn on semantics or on the use by the witness of any particular term or phrase." Furthermore, we must distinguish the question as to the legal sufficiency of expert testimony standing alone on the issue of cause, from the question of the effect of that testimony upon other evidence which would itself be sufficient proof on that issue. The question for us is whether the testimony of the doctor is so adverse to the existence of probable cause

as to overcome the weight of the circumstantial evidence.

When defense counsel asked Dr. Sloan if he could put his finger on the cause of the attack, he replied: "I can't say that did have, and I certainly can't say it didn't have something to do with it." But he did say: "I think that the chronological events that have happened makes it a strong possibility that this could help precipitate a heart attack." And when he was asked to look at the question from the standpoint of circumstantial evidence and say if medical probability was reasonable in this case, he answered: "Well, circumstantially, I would say, yes, strong possibility."

While the doctor's testimony was not as responsive and explicit as it could have been, he has said nothing to rule out a medical relation between the work occurrence and the attack, nor has he negated the reasonableness of the finding of causal connection. We think the jury was entitled to conclude as to the probability based upon all of the evidence in the case.

The judgment of the Court of Civil Appeals is affirmed.

Concurring opinion by GREENHILL, J.

McGEE, J., not sitting.

GREENHILL, Justice (concurring).

I regret that I am unable to join the majority opinion, mainly because I cannot understand the rule or rules it announces. If it intends to apply the rule requiring proof of "reasonable medical probability" for causation as announced in Insurance Company of North America v. Myers (Tex. Sup.1966), 411 S.W.2d 710 and interpreted in Otis Elevator Co. v. Wood (Tex.Sup. 1968), 436 S.W.2d 324, then I cannot agree with the opinion. If the opinion holds that in certain areas of workmen's compensation cases where there is a good deal of common and judicial medical knowledge, the jury will be permitted to determine causation

without, or even in spite of, expert medical testimony, then I can agree with the result.

As I understand the *Myers* and *Otis Elevator* cases, there are areas in which the plaintiff has the burden to prove by a competent medical witness, that "in reasonable medical probability," the alleged event or accident caused the injury. The opinions say that it is not critical, as a matter of semantics, that the doctor use the particular words "in reasonable medical probability" if that is, in context, the substance of his testimony.

Whether his testimony satisfies the "reasonable medical probability" test must be a question of law because it controls the submission of issues to the jury. The presence or absence of such testimony, for example, might be determinative as to whether a defendant would be entitled to an instructed verdict.

The doctor who was a witness here had been the plaintiff's physician for some 20 years, and he was called to the stand by the plaintiff. The electrical shock occurred on July 14, 1965, when the plaintiff was approximately 59 years of age. The doctor had taken an electrocardiogram of the plaintiff in 1957; and it was his opinion that in the process of aging, (and omitting as many medical terms as possible) the plaintiff had a predisposition to vascular difficulties. Some time between 1957 and 1965, he began to have hardening of the arteries, and the condition or disease was progressive. This hardening of the arteries resulted in the substantial narrowing of the diameter of the blood vessel which fed the particular heart muscle which died. The doctor said that coronary arteriosclerosis (hardening of the arteries) was a primary cause of the plaintiff's attack.

The doctor's testimony was that the function of an electrocardiograph (here referred to as an EKG) was to pick up electrical impulses given off by the heart and its muscles. When this particular muscle was alive, it gave off a positive electrical impulse which was picked up by the machine. When the blood vessel became completely blocked, as in his opinion this one did, the heart muscle begins to die. His testimony was that under these circumstances the heart muscle does not die immediately; that even though there is blockage of the blood vessel (a coronary occlusion), the muscle remains alive and does not die for 1 to 3 days. So that on the day of the blockage of the blood vessel feeding the muscle, the muscle would continue to give off electrical impulses which would be picked up on the EKG as positive signals. When the muscle dies (myocardial infarct) it no longer gives off the positive electrical impulse, and the EKG machine records a negative impulse.

It was the doctor's testimony that the plaintiff had been having pain in the epigastric region [in the vicinity of the heart] for several days before July the 14th, the day of his electrical shock. He went to the doctor on July 13th, giving the doctor the history of the pain, and the doctor took an EKG. It was normal. The doctor explained that the blood vessel could have already been blocked when he took the EKG on the 13th, but the heart muscle had not yet died and was continuing to give off the normal positive electrical impulses. When the plaintiff was brought to him around noon or thereafter on the 14th, the muscle probably had died; and the EKG was abnormal. The doctor could not "pin down" whether the plaintiff had had the coronary occlusion (blood vessel blockage) on the 13th or the 14th; and he could not testify where, in what vicinity, the plaintiff was when he had the attack. He testified that the attack may have started on the 13th. On cross examination, he stated that it was equally probable for the attack to have occurred if the plaintiff had been in bed or walking down the street. He also testified on direct examination that in reasonable medical probability, the attack might have occurred if the plaintiff had stayed in bed on the 14th. The doc-

tor then added, "It probably would have occurred anyhow."

When the doctor was asked the direct question by plaintiff's counsel if in reasonable medical probability the electric shock and the heart attack were causally related, the doctor said, "I don't know." Upon further questioning on direct examination, he said that, "I think there is a possibility it could have"; "It could have"; and as stated in the majority opinion, he also said, "I think that the chronological events * * * make it a *strong possibility* that this [the electrical shock] could help precipitate a heart attack"; but he immediately added, "I don't think you can say without medical doubt though because I have doubts whether it did or not, you see." [Emphasis added.]

And as stated, on cross examination, in explaining the EKG readings, it was his opinion that the attack could have begun the day before, on the 13th; that he could not say, in reasonable medical probability, whether the attack occurred on the 13th or 14th; and that it was equally medically probable that the attack would have occurred if the plaintiff had stayed in bed or was out walking.

Taking the above testimony in context, I cannot draw the legal conclusion that the substance of the doctor's testimony is that in reasonable medical probability, the electric shock on the 14th caused the plaintiff's heart attack. Singling out the particular words most favorable to the plaintiff, the doctor said there was a "strong possibility"; and, as I read his testimony, that is as far as he did go or intended to go.

The result is, in my opinion, that if the Court is of the opinion that expert medical testimony is required in heart attack cases such as this, it has substituted "strong possibility" of causation for "reasonable medical probability," and the test of the *Myers* case is no longer the law. The next case may involve not "strong possibility" but "reasonable possibility" or just "possibil-

ity"; i. e., is it "possible" for radiation to cause cancer. Apparently "possibility" is not enough in the cancer case in view of the Court's opinion handed down this date in Parker v. Employers Mutual Liability Insurance Co. of Wisconsin, Tex., 440 S. W.2d 43.

The Court apparently is unsure as to whether the doctor's testimony amounts to "reasonable medical probability" because at the end of the opinion, it concludes, in substance, that even if it is not, the doctor did not negative that possibility. As to that, the burden is on the plaintiff to prove causation; and either medical testimony of "reasonable medical probability" is necessary or it is not. I fail to see how the failure of the plaintiff's doctor to negative a necessary element of the plaintiff's case helps the plaintiff establish anything, including *reasonable medical probability*.

It seems to me that the case stands for this: we give a liberal construction in workmen's compensation cases; and we think that juries should be entitled to decide causation with or without medical testimony in areas of common experience. Let us suppose that a 60 year old workman had been working hard all day in extreme heat and humidity and had hurriedly climbed ten flights of stairs carrying a 100 pound object. At the top of the stairs, he faints and falls out and dies or becomes seriously ill and is thereafter unable to work; he is completely incapacitated. I believe that we would let that case go to the jury without medical testimony. That is, such evidence in a workmen's compensation case established a prima facie case. If the defendant tendered a doctor who testifies that the man had a heart attack, but that in his opinion physical exertion, however violent or prolonged, bears no relation to heart attacks, his testimony would not demolish the plaintiff's case and could be accepted or not accepted by the jury. The result would be that the courts would not allow a doctor's testimony to destroy the workman's case in the area where

courts and juries have common experience and knowledge.

There would be cases where the medical testimony was so strong and uniform, and the common experience and knowledge so speculative and unreliable that the medical testimony would completely destroy the plaintiff's prima facie case. I would be willing to say that such is not the case here. The workman had a predisposition to a heart attack. He was old, tired, and ill. He was hot and sweaty. He had been exerting himself considerably, holding and working with an electric drill above his head. He had climbed a ladder and received an electric shock which he testified went throughout his entire body. He became seriously ill very soon after the shock and was taken to a doctor. It is undisputed that he had a serious heart attack.

I would prefer to say that under these circumstances, the plaintiff made out a prima facie case for the jury, with or without medical testimony, or even in spite of it, to the holding that the doctor's testimony in this case rose to "reasonable medical probability," or that the failure of the doctor to negative reasonable medical probability somehow satisfied the plaintiff's burden of producing medical testimony and of proving reasonable medical probability of causation.