In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-03-00169-CV
______________________________


MARATHON ELECTRIC
MANUFACTURING CORPORATION, Appellant
 
V.
 
CLAUDINE SCHILLER, INDIVIDUALLY AND AS
REPRESENTATIVE OF THE ESTATE OF
MANFRED SCHILLER, ET AL., Appellees


                                              

On Appeal from the 5th Judicial District Court
Cass County, Texas
Trial Court No. 02-C-220


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Justice Ross


MEMORANDUM OPINION

          Marathon Electric Manufacturing Corporation (Marathon) appeals the trial court's
denial of Marathon's motion to quash a notice of deposition. The record indicates that the
parties are still involved in the discovery process of the underlying case and that no final
judgment has yet been entered. 
          Generally, an appeal may be taken only from a trial court's final decision. Tex. Civ.
Prac. & Rem. Code Ann. § 51.012 (Vernon 1997); Lehmann v. Har-Con Corp., 39 S.W.3d
191, 195 (Tex. 2001); Hinde v. Hinde, 701 S.W.2d 637, 639 (Tex. 1985). The Legislature
has, however, authorized the appeal of certain interlocutory orders. See Tex. Civ. Prac.
& Rem. Code Ann. §§ 15.003(c), 51.014, 171.098 (Vernon Supp. 2004). 
          "As a general rule . . . orders relating to discovery in aid of a pending or
contemplated cause, even when filed in a separate action, are considered interlocutory and
are not appealable except in connection with appeal upon final disposition of the main
cause on the merits." Pelt v. State Bd. of Ins., 802 S.W.2d 822, 827 (Tex. App.—Austin
1990, no writ). The order for which Marathon seeks appellate review is not within the
categories of those interlocutory orders from which the Legislature has authorized an
appeal. Neither is the trial court's order tantamount to a final judgment. "A judgment
constituting the finality requisite to an appeal must dispose of all parties and of all issues
in the suit, . . . ." Laurie v. Stabel, 482 S.W.2d 652, 654 (Tex. Civ. App.—Amarillo 1972,
no writ). The trial court's order denying the motion to quash disposes of none of the parties
or issues involved in the underlying suit. Thus, Marathon may not appeal the trial court's
ruling at this time.
          We dismiss the appeal for want of jurisdiction.


                                                                           Donald R. Ross
                                                                           Justice


Date Submitted:      January 12, 2004
Date Decided:         January 13, 2004



>Proof Required in Medical Malpractice Cases
            In a medical malpractice case, the plaintiff must prove by competent testimony that the
defendant's negligence proximately caused the plaintiff's injury. Duff v. Yelin, 751 S.W.2d 175, 176
(Tex. 1988) (citing Hart v. Van Zandt, 399 S.W.2d 791, 792 (Tex. 1965); Bowles v. Bourdon, 148
Tex. 1, 5, 219 S.W.2d 779, 782 (1949)). The plaintiff must establish a causal connection beyond the
point of conjecture; proof of mere possibilities will not support the submission of an issue to the jury. 
Duff, 751 S.W.2d at 176 (citing Lenger v. Physician's Gen. Hosp., Inc., 455 S.W.2d 703, 706 (Tex.
1970)). In a medical malpractice case, the plaintiff is required to show evidence of a "reasonable
medical probability" or "reasonable probability" that his or her injuries were proximately caused by
the negligence of one or more of the defendants. Park Place Hosp. v. Estate of Milo, 909 S.W.2d
508, 511 (Tex. 1995). The ultimate standard of proof on the causation issue is "whether, by a
preponderance of the evidence, the negligent act or omission is shown to be a substantial factor in
bringing about the harm and without which the harm would not have occurred."  Id. (quoting Kramer
v. Lewisville Mem'l Hosp., 858 S.W.2d 397, 400 (Tex. 1993)). A plaintiff is not required to establish
causation in terms of medical certainty, nor is he or she required to exclude every other reasonable
hypothesis. Bradley v. Rogers, 879 S.W.2d 947, 954 (Tex. App.—Houston [14th Dist.] 1994, writ
denied) (citing King v. Flamm, 442 S.W.2d 679, 682 (Tex. 1969); Rose v. Friddell, 423 S.W.2d 658
(Tex. App.—Tyler 1967, writ ref'd n.r.e.)). While expert medical testimony concerning the possible
causes of the condition in question is admissible to assist the trier of fact in evaluating other evidence
in the case, a possible cause only becomes probable when, in the absence of other reasonable causal
explanations, it becomes more likely than not that the injury was a result of its action. Bradley, 897
S.W.2d at 954.
Analysis and Conclusion
            Dr. Farris argues that the trial court correctly granted his traditional motion for summary
judgment because the evidence conclusively established that his actions did not cause or exacerbate
Debra's hip fractures. 
            In support of this motion, Dr. Farris relies on the deposition testimony of Dr. Littlejohn, an
orthopedic surgeon who operated on Debra's left hip. Dr. Littlejohn testified that Dr. Farris was not
responsible for any injuries to Debra's right hip. He further testified that, even if Dr. Farris had
x-rayed Debra, it would not have changed her outcome. Specifically, Dr. Littlejohn testified as
follows: 
A.It is a medical probability that if he had taken an x-ray three weeks
prior to her seeing me that it wouldn't have influenced her outcome.
 
Q.Okay. All right. Thank you. And in your opinion is there anything
Dr. Farris did or did not do to cause or exacerbate Mrs. Thomas's right hip fracture?
 
A.In my opinion there is nothing that Dr. Farris did to exacerbate her hip
fracture.

            As to Debra's left hip, Dr. Littlejohn testified similarly. Dr. Littlejohn, who surgically placed
three pins across the femoral neck of Debra's left hip, stated that, even if Dr. Farris had taken an
x-ray of Debra's left hip and discovered the nondisplaced left hip fracture, her course of treatment
would have been the same and that, in his opinion, there was nothing Dr. Farris did to cause or
exacerbate the left hip fracture. 
            For further treatment on her right hip, Debra saw Dr. Rutherford. Dr. Rutherford operated
on Debra's right hip and agreed that, if Dr. Farris had x-rayed Debra's right hip on June 27 after she
returned from her trip to San Francisco, her outcome would not have been any different. He further
testified that nothing Dr. Farris would or would not do changed the way that Debra heals her
fractures. 
            The only medical evidence the Thomases presented was Dr. Kelly Hood, D.C. Dr. Hood
stated that, in his opinion, Dr. Farris should have taken x-rays of Debra's hips. He further stated that
failing to take the x-ray of Debra was not "handled correctly" and that "poor record keeping has got
him in the situation that he is in now." However, Dr. Hood provided no testimony that, if such
conduct of Dr. Farris was a violation of the standard of care for chiropractors, it caused or
exacerbated Debra's hip fractures.
            The Thomases further allege that Dr. Farris' own statements raised a material fact issue as
to whether his failure to x-ray/diagnose Debra's hip condition exacerbated her femoral neck stress
fracture. In supporting this argument, the Thomases point to the testimony of Dr. Farris as follows:
Q.. . . . Can failure to stay off of a leg that has an incomplete stress
fracture going across the femoral neck cause a stress fracture to go ahead and finish
the break across?
 
A.It's possible.

            In determining medical causation or exacerbation of an injury, there must be evidence that
some particular causal connection is a reasonable medical probability, that is, a result reasonably to
be anticipated. Reasonable probability, in turn, is determinable by a consideration of the substance
of the testimony of the expert witness and does not turn on semantics or on the use by the witness
of any particular term or phrase. Ins. Co. of N. Am. v. Myers, 411 S.W.2d 710, 713 (Tex. 1966). The
Texas Supreme Court has upheld a finding of causal connection based on the testimony of an expert
witness stating, "I think that the chronological events that have happened makes it a strong
possibility that this could help precipitate a heart attack." Ins. Co. of N. Am. v. Kneten, 440 S.W.2d
52, 54 (Tex. 1969). In Kneten, the expert, when asked to look at the question from the standpoint
of circumstantial evidence and say if medical probability was reasonable, answered, "Well,
circumstantially, I would say, yes, strong possibility." Id. However the Texas Supreme Court, in
an opinion issued on the same day as Kneten, also held that there was a logical distinction between
a reasonable medical "probability" and a medical "possibility." There can be many possible "causes,"
indeed, and an infinite number of circumstances can cause an injury. But a possible cause only
becomes "probable" when, in the absence of other reasonable causal explanations, it becomes more
likely than not that the injury was the result of its action. This is the outer limit of inference on
which an issue can be submitted to the jury. Parker v. Employers' Mutual Liability Ins. Co., 440
S.W.2d 43, 47 (Tex. 1969). An expert need not use the magic words "reasonable medical
probability" if the evidence establishes that this is the substance of his or her opinion. Stodghill v.
Tex. Employers Ins. Ass'n, 582 S.W.2d 102, 105 (Tex. 1979). Likewise, even if an expert uses the
phrase "reasonable probability," the evidence is not sufficient when the substance of the expert
testimony raised only mere possibilities, speculation, and surmise. Schaeffer v. Tex. Employers' Ins.
Ass'n, 612 S.W.2d 199, 204 (Tex. 1980). The Texas Supreme Court found such testimony was no
evidence of causation even though the witness testified using the phrase "reasonable probability." 
Id. at 205.
            In this case, Dr. Farris was not asked whether Debra's stress fractures were further damaged
because of her continuing to walk on the leg. He only answered that it was possible for a stress
fracture to "go ahead and finish the break" if a person continues to walk on the leg. 
            There is no testimony in the record that Debra's failure to "stay off her leg" caused her further
injury. This evidence of Dr. Farris does no more than suggest that such further damage is
conceivably possible in a hypothetical case. We do not find this testimony to constitute evidence
of a causal connection between the acts or omissions of Dr. Farris and the ultimate injury of Debra. 
We believe that this testimony is no more than a mere possibility, speculation, and surmise and is
no evidence of reasonable medical probability of a causal connection between Dr. Farris' acts or
omissions and the injury of Debra. See id. at 204; Lenger, 455 S.W.2d at 707.
            We conclude there is no material fact issue raised by the evidence that any action or omission
of Dr. Farris was a proximate cause of Debra's injuries.
            We affirm the judgment of the trial court.


                                                                        Jack Carter
                                                                        Justice
 
Date Submitted:          October 17, 2005
Date Decided:             October 26, 2005