**Debra THOMAS and Stan Thomas, Appellants,**

v.

**Gearald FARRIS, Individually and d/b/a Farris Chiropractic Clinic, Appellee.**

No. 06–04–00115–CV.

Court of Appeals of Texas, Texarkana.

Submitted Oct. 17, 2005.

Decided Oct. 26, 2005.

---

Matthew R. Patton, IV, Robert D. Bennett, & Associates, PC, Gilmer, for appellants.

David L. Ovard, Christine D. Roseveare, Brian G. Hamilton, Strasburger & Price, LLP, Dallas, for appellee.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Justice CARTER.

Debra Thomas and Stan Thomas alleged that Dr. Gearald Farris, a chiropractor, was negligent in failing to x-ray Debra's hips and discover fractures incurred after she had an automobile accident. The Thomases appeal the summary judgment granted to Dr. Farris. We affirm the judgment of the trial court.

**Background**

On June 1, 2000, Debra was involved in an automobile accident. The next day, she went to see Dr. Farris, complaining of pain in her neck and upper shoulders. She also reported that she had been experiencing hip pain for one year. She continued to see Dr. Farris for a month. In the latter part of June, she traveled to San Francisco. After returning from California, she began to have more hip pain. A few days later, when she was in New Orleans, she tripped in a restaurant and developed severe hip pain. On returning from New Orleans, she went to Good Shepherd Hospital with her hip severely swollen and extremely painful. She was diagnosed with fractures of both hips (a femoral neck fracture of both hips). The right hip was treated conservatively, but Dr. Stephen Littlejohn operated on Debra's left hip July 6, 2000. She later saw Dr. Charles Rutherford, who operated on Debra's right hip. Eventually, she had a total replacement of the left hip. The Thomases filed suit against Dr. Farris alleging negligence in his treatment of Debra. Dr. Farris filed a motion for summary judgment (both traditional and no-evidence). The trial court granted the traditional motion for summary judgment. The Thomases appeal alleging the trial court erred in granting the summary judgment because there are material questions of fact as to (1) whether Dr. Farris was negligent in failing to diagnose/x-ray Debra's hips, which caused or exacerbated her hip fractures, and (2) whether x-rays of Debra's hips could have diagnosed a pre-existing hip fracture and prevented further injury.

**Standard of Review**

■ The trial court granted the traditional motion for summary judgment. In a traditional motion for summary judgment, the party moving for summary judgment carries the burden of establishing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *See* TEX.R. CIV. P. 166a(c); *Rhone–Poulenc, Inc. v. Steel,* 997 S.W.2d 217, 223 (Tex.1999); *Calvillo v. Gonzalez,* 922 S.W.2d 928, 929 (Tex.1996); *Wornick Co. v. Casas,* 856 S.W.2d 732, 733 (Tex. 1993); *Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 548 (Tex.1985). When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant. *See Sci. Spectrum, Inc. v. Martinez,* 941 S.W.2d 910, 911 (Tex.1997). We indulge every reasonable inference to resolve any doubts in the nonmovant's favor. *Id.* An appellate court may affirm the judgment on any grounds properly raised before the trial court, even when the trial court grants summary judgment specifically on fewer than all grounds asserted. *Cincinnati Life Ins. Co. v. Cates,* 927 S.W.2d 623, 625–26 (Tex.1996). A defendant who conclusively negates at least one of the essential elements of the plaintiff's cause of action is entitled to a summary judgment. *Little v. Tex. Dep't of Criminal Justice,* 148 S.W.3d 374, 381 (Tex.2004).

**Proof Required in Medical Malpractice Cases**

■ In a medical malpractice case, the plaintiff must prove by competent tes-

timony that the defendant's negligence proximately caused the plaintiff's injury. *Duff v. Yelin*, 751 S.W.2d 175, 176 (Tex. 1988) (citing *Hart v. Van Zandt*, 399 S.W.2d 791, 792 (Tex.1965); *Bowles v. Bourdon*, 148 Tex. 1, 5, 219 S.W.2d 779, 782 (1949)). The plaintiff must establish a causal connection beyond the point of conjecture; proof of mere possibilities will not support the submission of an issue to the jury. *Duff*, 751 S.W.2d at 176 (citing *Lenger v. Physician's Gen. Hosp., Inc.*, 455 S.W.2d 703, 706 (Tex.1970)). In a medical malpractice case, the plaintiff is required to show evidence of a "reasonable medical probability" or "reasonable probability" that his or her injuries were proximately caused by the negligence of one or more of the defendants. *Park Place Hosp. v. Estate of Milo*, 909 S.W.2d 508, 511 (Tex. 1995). The ultimate standard of proof on the causation issue is "whether, by a preponderance of the evidence, the negligent act or omission is shown to be a substantial factor in bringing about the harm and without which the harm would not have occurred." *Id.* (quoting *Kramer v. Lewisville Mem'l Hosp.*, 858 S.W.2d 397, 400 (Tex.1993)). A plaintiff is not required to establish causation in terms of medical certainty, nor is he or she required to exclude every other reasonable hypothesis. *Bradley v. Rogers*, 879 S.W.2d 947, 954 (Tex. App.-Houston [14th Dist.] 1994, writ denied) (citing *King v. Flamm*, 442 S.W.2d 679, 682 (Tex.1969); *Rose v. Friddell*, 423 S.W.2d 658 (Tex.App.-Tyler 1967, writ ref'd n.r.e.)). While expert medical testimony concerning the possible causes of the condition in question is admissible to assist the trier of fact in evaluating other evidence in the case, a possible cause only becomes probable when, in the absence of other reasonable causal explanations, it becomes more likely than not that the injury was a result of its action. *Bradley*, 879 S.W.2d at 954.

## Analysis and Conclusion

■ Dr. Farris argues that the trial court correctly granted his traditional motion for summary judgment because the evidence conclusively established that his actions did not cause or exacerbate Debra's hip fractures.

In support of this motion, Dr. Farris relies on the deposition testimony of Dr. Littlejohn, an orthopedic surgeon who operated on Debra's left hip. Dr. Littlejohn testified that Dr. Farris was not responsible for any injuries to Debra's right hip. He further testified that, even if Dr. Farris had x-rayed Debra, it would not have changed her outcome. Specifically, Dr. Littlejohn testified as follows:

A. It is a medical probability that if he had taken an x-ray three weeks prior to her seeing me that it wouldn't have influenced her outcome.

Q. Okay. All right. Thank you. And in your opinion is there anything Dr. Farris did or did not do to cause or exacerbate Mrs. Thomas's right hip fracture?

A. In my opinion there is nothing that Dr. Farris did to exacerbate her hip fracture.

As to Debra's left hip, Dr. Littlejohn testified similarly. Dr. Littlejohn, who surgically placed three pins across the femoral neck of Debra's left hip, stated that, even if Dr. Farris had taken an x-ray of Debra's left hip and discovered the non-displaced left hip fracture, her course of treatment would have been the same and that, in his opinion, there was nothing Dr. Farris did to cause or exacerbate the left hip fracture.

For further treatment on her right hip, Debra saw Dr. Rutherford. Dr. Rutherford operated on Debra's right hip and agreed that, if Dr. Farris had x-rayed

Debra's right hip on June 27 after she returned from her trip to San Francisco, her outcome would not have been any different. He further testified that nothing Dr. Farris would or would not do changed the way that Debra heals her fractures.

The only medical evidence the Thomases presented was Dr. Kelly Hood, D.C. Dr. Hood stated that, in his opinion, Dr. Farris should have taken x-rays of Debra's hips. He further stated that failing to take the x-ray of Debra was not "handled correctly" and that "poor record keeping has got him in the situation that he is in now." However, Dr. Hood provided no testimony that, if such conduct of Dr. Farris was a violation of the standard of care for chiropractors, it caused or exacerbated Debra's hip fractures.

The Thomases further allege that Dr. Farris' own statements raised a material fact issue as to whether his failure to x-ray/diagnose Debra's hip condition exacerbated her femoral neck stress fracture. In supporting this argument, the Thomases point to the testimony of Dr. Farris as follows:

> Q. .... Can failure to stay off of a leg that has an incomplete stress fracture going across the femoral neck cause a stress fracture to go ahead and finish the break across?
>
> A. It's possible.

▪▪▪▪▪ In determining medical causation or exacerbation of an injury, there must be evidence that some particular causal connection is a reasonable medical probability, that is, a result reasonably to be anticipated. Reasonable probability, in turn, is determinable by a consideration of the substance of the testimony of the expert witness and does not turn on semantics or on the use by the witness of any particular term or phrase. *Ins. Co. of N. America v. Myers*, 411 S.W.2d 710, 713 (Tex.1966). The Texas Supreme Court has upheld a finding of causal connection based on the testimony of an expert witness stating, "I think that the chronological events that have happened makes it a strong possibility that this could help precipitate a heart attack." *Ins. Co. of N. America v. Kneten*, 440 S.W.2d 52, 54 (Tex.1969). In *Kneten*, the expert, when asked to look at the question from the standpoint of circumstantial evidence and say if medical probability was reasonable, answered, "Well, circumstantially, I would say, yes, strong possibility." *Id.* However the Texas Supreme Court, in an opinion issued on the same day as *Kneten*, also held that there was a logical distinction between a reasonable medical "probability" and a medical "possibility." There can be many possible "causes," indeed, and an infinite number of circumstances can cause an injury. But a possible cause only becomes "probable" when, in the absence of other reasonable causal explanations, it becomes more likely than not that the injury was the result of its action. This is the outer limit of inference on which an issue can be submitted to the jury. *Parker v. Employers' Mutual Liability Ins. Co.*, 440 S.W.2d 43, 47 (Tex.1969). An expert need not use the magic words "reasonable medical probability" if the evidence establishes that this is the substance of his or her opinion. *Stodghill v. Tex. Employers Ins. Ass'n*, 582 S.W.2d 102, 105 (Tex.1979). Likewise, even if an expert uses the phrase "reasonable probability," the evidence is not sufficient when the substance of the expert testimony raised only mere possibilities, speculation, and surmise. *Schaefer v. Tex. Employers' Ins. Assn.*, 612 S.W.2d 199, 204 (Tex.1980). The Texas Supreme Court found such testimony was no evidence of causation even though the witness testified using the phrase "reasonable probability." *Id.* at 205.

In this case, Dr. Farris was not asked whether Debra's stress fractures were further damaged because of her continuing to walk on the leg. He only answered that it was possible for a stress fracture to "go ahead and finish the break" if a person continues to walk on the leg.

There is no testimony in the record that Debra's failure to "stay off her leg" caused her further injury. This evidence of Dr. Farris does no more than suggest that such further damage is conceivably possible in a hypothetical case. We do not find this testimony to constitute evidence of a causal connection between the acts or omissions of Dr. Farris and the ultimate injury of Debra. We believe that this testimony is no more than a mere possibility, speculation, and surmise and is no evidence of reasonable medical probability of a causal connection between Dr. Farris' acts or omissions and the injury of Debra. *See id.* at 204; *Lenger*, 455 S.W.2d at 707.

We conclude there is no material fact issue raised by the evidence that any action or omission of Dr. Farris was a proximate cause of Debra's injuries.

We affirm the judgment of the trial court.