

NUMBERS 13-18-00427-CV AND 13-18-00613-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

TROY TUCKER,                                                          **Appellant,**

**v.**

**RAYMOND BUBAK, EDDE MANAGEMENT,
INC., EDDE VENTURES, L.P., EDDE DRILLING
SERVICES, LLC, AND TITAN OILFIELD, LLC,**              **Appellees.**

**On appeal from the 267th District Court
of Victoria County, Texas.**

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Benavides and Hinojosa
Memorandum Opinion by Chief Justice Contreras**

In two appeals, appellant Troy Tucker challenges the trial court's granting of

summary judgment in favor of appellees, Raymond Bubak, Edde Management, Inc. (EM),

Edde Ventures, L.P. (EV), Edde Drilling Services, LLC (EDS), and Titan Oilfield, LLC

(Titan), in a suit seeking the winding up and termination of business entities under the Texas Business Organizations Code. *See* TEX. BUS. ORGS. CODE ANN. §§ 11.054, 11.314. Tucker raises nine total issues arguing generally that the trial court erred by: (1) improperly considering late-filed summary judgment evidence; (2) granting summary judgment on grounds not specified in the motion; (3) granting equitable relief without statutory authorization; (4) "improperly using the Summary Judgment to award equitable relief"; and (5) granting summary judgment without competent evidence. We affirm in part and reverse and render in part.

## I. BACKGROUND

In 1997, Tucker and others formed Edde Drilling Company, LLC (EDC), a firm engaged in the drilling of wells for oilfield operators. Since 2007, Tucker and Bubak have each owned forty-five percent of EDC, and another investor, Michael Best, owned the remaining ten percent. In 2010, Tucker and Bubak formed several other entities, including EV, a limited partnership. EV owns 100% of EDS, another well-drilling concern, and Titan, which handles trucking operations. Tucker and Bubak each own forty-nine percent of EV and are that entity's sole limited partners. The remaining two percent of EV is owned by EM, which is EV's sole general partner. EM, in turn, is owned equally by Tucker and Bubak. EDC and EDS each own two drilling rigs which they use cooperatively for both "turnkey" and "daywork" drilling projects.[1] All of the entities are referred to

---

[1] A "turnkey" drilling contract is

[a] type of financing arrangement for the drilling of a wellbore that places considerable risk and potential reward on the drilling contractor. Under such an arrangement, the drilling contractor assumes full responsibility for the well to some predetermined milestone such as the successful running of logs at the end of the well, the successful cementing of casing in the well or even the completion of the well. Until this milestone is reached, the operator owes nothing to the contractor. The contractor bears all risk of trouble in the well, and in extreme cases, may have to abandon the well entirely and start over. In return for assuming such risk, the price of the well is usually a little higher than the well would cost if

collectively as "Edde Drilling."

Bubak also owns Lauson Energy (Lauson), a company that provides engineering services. A conflict arose between Tucker and Bubak regarding, in part, compensation paid by Edde Drilling to Lauson for engineering services. Tucker and Bubak entered into a mediated settlement agreement in 2016 which, among other things, set a compensation schedule for engineering services provided by Lauson to Edde Drilling.

Tucker claims that Bubak then "set on a course of conduct to coerce Edde Drilling and Tucker to pay Bubak a larger share of the profits" earned by the Edde entities. In particular, Tucker asserts that Bubak "wanted [Lauson] to retain all of the profits for providing the engineering component" of turnkey contracts entered into by Edde Drilling. Under this proposal, Edde Drilling would be compensated only for "day-rate work for putting its rigs in service."

According to Tucker, after he refused to assent to Bubak's proposal, Bubak's two sisters and his brother-in-law started a new company, SDS Drilling Services, LLC (SDS), to compete with Edde Drilling. According to Tucker, Bubak purchased two drilling rigs through Lauson, and then sold them to SDS. He also assisted various SDS employees and executives throughout 2017. Tucker asserts that SDS lured away several Edde Drilling customers and hired several Edde Drilling employees, all while Bubak "terminated all but four Edde Drilling employees."

---

relatively trouble free. Therefore, if the contractor succeeds in drilling a trouble-free well, the fee added as contingency becomes profit.

SCHLUMBERGER OILFIELD GLOSSARY, https://www.glossary.oilfield.slb.com/en/Terms/t/turnkey.aspx (last visited June 19, 2019). On the other hand, under a "daywork" contract, the operator pays the contractor a fixed price per day to drill the well and generally assumes the risks of the drilling operation except as expressly otherwise provided. *Painter v. Sandridge Energy, Inc.*, 511 S.W.3d 713, 721 (Tex. App.—El Paso 2015, pet. denied) (citations omitted). A daywork contract is similar to the contractor's lease of a rig, related equipment, and crew to the operator. *Id.*

3

Bubak—in his individual capacity and as an officer of the other appellees—filed the instant suit against Tucker in April 2017, seeking (1) court supervision of the winding up process of the entities under Texas Business Organizations Code § 11.054,[2] or (2) in the alternative, a court order involuntarily winding up EV and EDC under Texas Business Organizations Code § 11.314. *See id.* §§ 11.054, 11.314. Bubak's suit also sought damages for breach of contract and breach of fiduciary duty, as well as an injunction preventing Tucker from (1) interfering with Bubak's exercise of various duties as president of EM, or (2) disbursing any funds from the Edde Drilling entities without Bubak's written consent. Tucker answered the suit and filed counterclaims for breach of contract, breach of fiduciary duty, and tortious interference with contractual relationships. Tucker's pleading also named SDS and Lauson as a third-party defendants.

Bubak filed a "Motion for Partial Summary Judgment" on December 6, 2017, contending that he was entitled to judgment as a matter of law because, due to Tucker's conduct, "Bubak and Tucker are unable to manage the entities together," "[t]he economic purpose of the entities is likely to be unreasonably frustrated," and "it [is] not reasonably practicable to carry on business in conformity with [the entities'] governing documents." *See id.* §§ 11.054, 11.314. The motion additionally argued that Bubak was entitled to judgment under Texas Business Organizations Code § 11.404 because "Bubak and Tucker, as the governing persons of the entities are deadlocked in the management of the entities' affairs . . . [,] are unable to break the deadlock, and irreparable injury to the entities is being suffered or is threatened because of the deadlock." *See id.* § 11.404

---

[2] The petition stated: "Plaintiffs file this action primarily under the above referenced code to avail itself of court supervision regarding the winding up of the companies. Plaintiffs intend to submit a plan to the court and obtain court approval of the plan."

4

("Appointment of Receiver to Rehabilitate Domestic Entity"). In its prayer for relief, Bubak's motion requested an order "w[inding] up and dissolv[ing the entities] under court supervision" and appointing a receiver "to accomplish this winding up of the entities." *See id.*

Tucker filed a response to the motion arguing in part that "[his] extensive summary judgment evidence shows that there is, at a very minimum, a question for the jury as to whether Bubak breached his agreements and fiduciary duties regarding the destruction of Edde Drilling and the concurrent establishment of SDS, a direct competitor of Edde Drilling." Tucker's response further contended that: (1) the appointment of a receiver is not permitted by § 11.404 because Bubak does not seek to "rehabilitate" the Edde Drilling entities; (2) the appointment of a receiver is not permitted by § 11.054; and (3) "[a]ny order requiring the winding up and dissolution of Edde Drilling would not dispose of all claims and parties, meaning it cannot be enforced." Tucker attached various pieces of evidence to his response.

At a hearing on April 18, 2018, Bubak withdrew his request for a receiver. He also withdrew his request for the winding up and dissolution of EDC and instead confined that request to the remaining entities. The trial court heard argument on the partial summary judgment motion and took the matter under advisement. On April 24, 2018, it issued a memorandum order stating in its entirety as follows:

> As to [Bubak's] Motion For Partial Summary Judgement [sic] as to [EM], [EV], [EDS], and [Titan] (hereinafter referred to as "the entities"), the Court finds that there is no genuine issue as to any material fact that the "economic purposes of the entities is likely to be frustrated." Therefore, in accordance with Section 11.314(1)(A) [sic], Tex. Bus. Org. Code, the Court orders the involuntary winding up and termination of "the entities," having found that the Plaintiffs' Motion For Partial Summary Judgement [sic] as to "the entities" should be granted.

5

The parties are ordered to attempt to reach an agreement as to how "the entities" should be wound up and terminated. If the parties are unable to reach an agreement, then each party is ordered to submit to the Court their detailed plan on how "the entities" should be wound down [sic] and terminated. The Court will then issue its own plan as to how to wind up and terminate "the entities."

The Court further orders that all causes of action by either party against the other party/parties shall be severed from this Partial Summary Judgement [sic] Order.

[Bubak's counsel] is ordered to prepare appropriate orders to comply with this Court's rulings.

Tucker filed a motion for new trial which was denied.

Bubak then filed a "Motion for Entry of an Order Granting [Bubak's] Motion for Partial Summary Judg[men]t" (the Motion for Entry of Order) stating that "[t]he parties have conferred but have been unable to agree on an order that complies with the Ruling of the Court." The motion contained an affidavit by Bubak establishing the Edde entities' assets and liabilities, as well as a proposed order.[3] Tucker responded to the motion.

After a hearing on July 16, 2018, the trial court signed the order proposed by Bubak.[4] The July 16 order stated:

After considering the Motion and the arguments of counsel, the Court finds that there is no genuine issue as to any material fact that the "economic purposes of the entities is likely to be frustrated." Therefore, in accordance with Section 11.314 (1)(A) [sic], Tex. Bus. Org. Code, the Court orders the involuntary winding up and termination of "the entities" [EM, EV, EDS, and Titan]. The Co-Plaintiff's Motion for Partial Summary Judgment as to "the entities" is hereby GRANTED.

The Court Orders that the entities be wound up as follows:

1.     Appoint Raymond Bubak to manage and effectuate the winding up

---

[3] According to Bubak's affidavit, the Edde entities' current liabilities include "[i]nternal disputes between the parties, including those pled in this lawsuit."

[4] The trial court first rendered an order containing a blank space where "14" appears under item 5; later on July 16, 2018, it rendered a "Nunc Pro Tunc" order which filled in the blank. For purposes of this opinion, we will refer to the latter, corrected order as the "July 16 order."

6

of the entities including but not limited to:

a. Handle distribution the assets of the entities [sic]. Property and equipment shall be distributed pursuant to Exhibit A;

b. Control and distribute cash accounts;

c. Assign Ricochet Bankruptcy Receivable 50%/50% to Tucker and Bubak;

d. Assign all working interests in wells and oil and gas leases 50% to Tucker and 50% to Bubak;

e. Complete final windup and tax reporting paperwork;

f. Raymond Bubak will hold sufficient cash in reserve to pay final accounting bills pending final resolution of this case.

2. Raymond Bubak will be the sole signatory on all bank accounts.

3. Litigant Tucker will turn over the computer of the entities to Raymond Bubak for use in conducting final office and accounting functions;

4. Litigant Tucker turnover to Raymond Bubak all keys to all vehicles owned by the entities; and

5. Litigant Tucker will allow Raymond Bubak full access to the Yard and Office for a period of 14 days to remove all property of the entities.

The Court further ORDERS that all remaining causes of action by any party against the other party/parties shall be severed from this Partial Summary Judgment Order and that this order be final.

"Exhibit A" to the July 16 order was an "Equipment Asset List and Distribution Plan" (the Asset List), which had been prepared by Bubak and was attached to his proposed order. The Asset List detailed the market value of the companies' assets and proposed how they should be distributed to the parties. According to the Asset List, $722,528 worth of assets would be distributed to Tucker and $723,466 worth of assets would be distributed to Bubak.

Following the July 16 order, Tucker filed a notice of interlocutory appeal (the first

appeal).[5] He also filed another motion for new trial which was denied.

On August 24, 2018, the trial court rendered an "Order Granting Stay and Setting Supersedas [sic] Bond" which stated in part that the July 16 order "is "final, and the Order is hereby stayed and no party can execute on or enforce the Order until this Court loses its plenary power and jurisdiction." The August 24 order contained a finding that "the fair market value of the personal property owned by the Entities that [is] subject to the Order is $722,997" and it set a supersedeas bond in that amount. *See* TEX. R. APP. P. 24.1, 24.2(a)(3). Tucker again filed a motion for new trial and to reconsider the supersedeas order, which was denied by operation of law. *See* TEX. R. CIV. P. 329b(c). Tucker again perfected an appeal (the second appeal).[6]

## II. DISCUSSION

The parties have filed briefs in both appeals. Although the records, facts, and matters in dispute appear to be identical in both appeals,[7] Tucker's briefs raise different issues and arguments, only some of which overlap. In an abundance of caution and in our sole discretion, we will accept the briefs in both appeals and endeavor to address every issue fairly raised therein.[8]

---

[5] Appellate cause number 13-18-00427-CV.

[6] Appellate cause number 13-18-00613-CV.

[7] Tucker's notice of appeal in appellate cause number 13-18-00427-CV purports to challenge the trial court's initial order on July 16, 2018, whereas his notice of appeal in appellate cause number 13-18-00613-CV purports to challenge the nearly-identical July 16, 2018 "Nunc Pro Tunc" order. Both of Tucker's briefs were filed subsequent to the trial court's August 24, 2018 order declaring the July 16 order final and setting a supersedeas bond amount.

[8] We note that, under Texas Rule of Appellate Procedure 27.3, if a trial court amends an order from which an appeal has already been perfected, we "must treat the appeal as from the subsequent order or judgment and may treat actions relating to the appeal of the first order or judgment as relating to the appeal of the subsequent order or judgment." TEX. R. APP. P. 27.3. Still, "[a]ny party may nonetheless appeal from the subsequent order or judgment." *Id.* The second appeal was authorized under this rule.

## A.     Appellate Jurisdiction

On our own volition, we first address whether we have jurisdiction over the "interlocutory" appeal in cause number 13-18-00427-CV.  *See M.O. Dental Lab v. Rape*, 139 S.W.3d 671, 673 (Tex. 2004) ("[W]e are obligated to review sua sponte issues affecting jurisdiction.").  Generally, we have jurisdiction only over an appeal taken from a final judgment, except where an interlocutory appeal is permitted by statute.  *See Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 195 (Tex. 2001).  "[W]hen there has not been a conventional trial on the merits, an order or judgment is not final for purposes of appeal unless it actually disposes of every pending claim and party or unless it clearly and unequivocally states that it finally disposes of all claims and all parties."  *Id.* at 205.

Tucker does not address our jurisdiction in any of his briefs.  We observe that the trial court's initial July 16, 2018 order, which is the subject of the first appeal, states in part:  "The Court further ORDERS that all remaining causes of action by any party against the other party/parties shall be severed from this Partial Summary Judgment Order and that this order be final."  The trial court's August 24, 2018 order confirmed that the July 16 order "grant[ed] Bubak's Motion for Partial Summary Judgment," "sever[ed] the judgment rendered," and "is final."  A judgment is not final merely because it states that it is final, *id.*, but because the July 16 order unambiguously severed all of the causes of action which it did not dispose of, it demonstrated an unequivocal intent to "actually dispose[] of every pending claim and party."  Therefore, it is final and appealable.  *See id.* (noting that an order is final and appealable if the "intent to finally dispose of the case" is "unequivocally expressed in the words of the order itself").  We have jurisdiction over Tucker's first appeal.

9

**B.  Applicable Law**

Under § 11.314 of the Texas Business Organizations Code, a trial court may

order the winding up and termination of [a] domestic partnership or limited liability company on application by an owner of the partnership or limited liability company if the court determines that:

(1)   the economic purpose of the entity is likely to be unreasonably frustrated;

(2)   another owner has engaged in conduct relating to the entity's business that makes it not reasonably practicable to carry on the business with that owner; or

(3)   it is not reasonably practicable to carry on the entity's business in conformity with its governing documents.

TEX. BUS. ORGS. CODE ANN. § 11.314.

Additionally, upon application by an owner or member of a domestic entity,[9] and

subject to other provisions of the business organizations code, a court may:  "(1)

supervise the winding up of [a] domestic entity; (2) appoint a person to carry out the

winding up of the domestic entity; and (3) make any other order, direction, or inquiry that

the circumstances may require."  *Id.* § 11.054.

**C.  Consideration of Asset List**

By the third issue in his first appeal and the first two issues in his second appeal,

Tucker argues that the trial court erred by considering the Asset List as summary

judgment evidence.  The Asset List was filed by Bubak as an exhibit to his proposed

summary judgment order, which was in turn attached to his Motion for Entry of Order.

Tucker contends that the Asset List was improperly considered because it was filed within

---

[9] "Domestic entity" means a corporation, limited or general partnership, limited liability company, or other business organization formed under, or the internal affairs of which are governed by, the business organizations code.  TEX. BUS. ORGS. CODE ANN. § 1.002(18), (62).

twenty-one days prior to rendition of summary judgment.  *See* TEX. R. CIV. P. 166a(c) ("Except on leave of court, with notice to opposing counsel, the motion and any supporting affidavits shall be filed and served at least twenty-one days before the time specified for hearing.").  He argues in the alternative that, if the Motion for Entry of Order is not considered a summary judgment motion, summary judgment was improper because it was granted on grounds not specified in the actual motion.  *See id.* (providing that a court may grant summary judgment only if "the moving party is entitled to judgment as a matter of law on the issues expressly set out in the motion").  In particular, Tucker notes that Bubak's motion for partial summary judgment did not request that Bubak *himself* be appointed as the person to carry out the winding up of the entities.  *See* TEX. BUS. ORGS. CODE ANN. § 11.054(2).

We disagree with both arguments.  The trial court's April 24, 2018 order granted Bubak's motion for partial summary judgment, and it directed the parties to "attempt to reach an agreement" as to how the entities should be wound up.  The order further stated that, if the parties are unable to reach such an agreement, then "each party is ordered to submit to the Court their detailed plan" on how the winding up should be accomplished. Bubak asserted in his Motion for Entry of Order that he was unable to reach an agreement with Tucker as contemplated in the April 24 order, and Tucker does not dispute this fact. The Asset List—with its valuations and proposed distribution of assets—constituted Bubak's "detailed plan" on how to wind up the entities.  Though he responded to Bubak's Motion for Entry of Order and objected to Bubak being appointed the "person to carry out" the winding up, Tucker did not submit any plan on how to wind up the entities.  Moreover, Tucker has never disputed the accuracy of the valuations contained in the Asset List, nor

11

has he ever disputed the propriety of the distribution proposed therein.

Importantly, at the time Bubak filed his Motion for Entry of Order and proposed order with the Asset List, the trial court had already granted his motion for partial summary judgment by its memorandum order of April 24, 2018. It logically follows that the Asset List could not have been submitted by Bubak—nor could it have been considered by the trial court—for the purpose of establishing Bubak's entitlement to judgment as a matter of law on the claims raised in his petition. In particular, the Asset List is not probative as to the elements required for the involuntary winding up and termination of a domestic business entity under either § 11.054 or § 11.314 of the business organizations code. *See id.* §§ 11.054, 11.314.

Similarly, although Bubak requested to be appointed as the person "to carry out the winding up" of the entities for the first time in his Motion for Entry of Order, the trial court had already granted summary judgment as of that time. Like the Asset List, Bubak's request to be appointed as the person "to carry out the winding up" of the entities did not implicate any element of his statutory claims. It was not a ground for summary judgment which needed to be expressly set out in the summary judgment motion. *See* TEX. R. CIV. P. 166a(c). Instead, the trial court's appointment of Bubak was authorized by § 11.054 of the business organizations code, which gives the trial court broad authority, upon application by "an owner" of an entity, to "appoint a person to carry out the winding up" of the entity and to "make any other order, direction, or inquiry that the circumstances may require." *See* TEX. BUS. ORGS. CODE ANN. § 11.054(2), (3).

For the foregoing reasons, the trial court did not err by considering the Asset List in making its July 16, 2018 judgment or by explicitly incorporating the Asset List in that

judgment. Tucker's issues contending otherwise are overruled.

## D. Award of Equitable Relief Via Summary Judgment

By the fourth issue in his second appeal, Tucker contends that summary judgment is an "inappropriate vehicle through which to award equitable relief" such as the winding up and termination of a business entity.[10] He cites case law establishing that "dissolution proceedings are equitable in nature" and that, "[w]hen contested fact issues must be resolved before a court can determine the expediency, necessity, or propriety of equitable relief, a party is entitled to have a jury resolve the disputed fact issues." *CBIF Ltd. P'ship v. TGI Friday's Inc.*, No. 05-15-00157-CV, 2017 WL 1455407, at *9 (Tex. App.—Dallas Apr. 21, 2017, pet. denied) (mem. op.) (citing *M.R. Champion, Inc. v. Mizell*, 904 S.W.2d 617, 618 (Tex. 1995); *State v. Tex. Pet Foods, Inc.*, 591 S.W.2d 800, 803 (Tex. 1979)). Tucker also cites *In re Spiritas*, in which the Dallas Court of Appeals granted mandamus relief and vacated the trial court's summary judgment ordering the winding up of a limited liability partnership. No. 05-16-00791-CV, 2017 WL 1281394, at *3 (Tex. App.—Dallas Apr. 6, 2017, orig. proceeding) (mem. op.).

We disagree that there is anything improper about granting an application for the winding up of a business entity pursuant to summary judgment procedure. The rule governing summary judgments states that "[a] party seeking to recover upon a claim, counterclaim, or cross-claim or to obtain a declaratory judgment may" move for summary judgment "at any time after the adverse party has appeared or answered . . . ." TEX. R. CIV. P. 166a(a). The rule does not restrict the type of "claim" which may be disposed of

---

[10] To the extent Tucker argues the merits of the summary judgment by this issue, we address that *infra* Section II.F.

13

in this manner. Instead, summary judgment may be granted ordering the winding up and termination of a business entity. *See Hill v. Hill*, 460 S.W.3d 751, 760 (Tex. App.—Dallas 2015, pet. denied) (affirming a summary judgment ordering the winding up and termination of a limited liability company under § 11.314).

The cases Tucker cites are inapposite or distinguishable. *CBIF* merely restated the rule that summary judgment may not be granted if there are disputed issues of material fact. *See CBIF Ltd. P'ship*, 2017 WL 1455407, at *9; *see also* TEX. R. CIV. P. 166a(c). The order at issue in *In re Spiritas* was vacated only because it "allowed execution" despite not being final or appealable. *See In re Spiritas*, 2017 WL 1281394, at *3 ("The May 12, 2016 winding up order appoints a representative to begin winding up SRE and sell its real property. In other words, the winding up order permits execution of a non-final order because it puts into immediate effect the February 16, 2016 order declaring that an event requiring the winding up of SRE had occurred. But neither order is a final, appealable judgment because the orders do not dispose of all parties and all claims. . . . A court abuses its discretion by allowing the execution of a non-final order."). That is not a concern here because the trial court's order is final and is therefore subject to supersedeas under Texas Rule of Appellate Procedure 24.

We overrule Tucker's fourth issue in the second appeal.

E.      **Statutory Authority to Order Winding Up**

By the second issue in his first appeal and the third issue in his second appeal, Tucker argues that Bubak "cannot meet the statutory requirements" for the court-ordered winding up of a business entity, and therefore, Bubak failed to establish his entitlement to judgment as a matter of law. *See* TEX. R. CIV. P. 166a(c).

14

Tucker first contends that the sections of the business organizations code cited by Bubak in his petition—i.e., §§ 11.054 and 11.314—do not allow for the appointment of a receiver to wind up an entity. But Bubak abandoned his claim for the appointment of a receiver, and the trial court did not order one in this case.

Tucker next complains that the trial court cited a non-existent portion of the statute, "subparagraph 11.314(A)(1)," in its July 16 order. In actuality, the non-existent subsection cited by the trial court in its order was "Section 11.314(1)(A)," not "subparagraph 11.314(A)(1)." In any event, it is clear that the trial court intended to refer to subsection 11.314(1), because it referenced the language of that subsection in its order. *See* TEX. BUS. ORGS. CODE ANN. § 11.314 (allowing winding up and termination if "the economic purpose of the entity is likely to be unreasonably frustrated").

Finally, Tucker argues in these issues that the statute which the trial court specified as the basis for its order, business organizations code § 11.314, does not permit an order compelling the involuntary winding up of a corporation, such as EM. We agree. Involuntary winding up and termination under § 11.314 is restricted to partnerships and limited liability companies. *See id.* (entitled "Involuntary Winding Up and Termination of Partnership or Limited Liability Company"). Bubak does not dispute this, but instead contends that the order as to EM was authorized by § 11.054, which allows a court to "supervise the winding up" or "appoint a person to carry out the winding up" of any "domestic entity," a term which includes corporations. *See id.* § 11.054; *see also id.* § 1.002(18), (62).[11]

_____

[11] Even though the trial court's order cited only § 11.314 as a basis for its ruling, we may affirm summary judgment on other grounds if they are preserved by the movant and supported by the record. *See Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 626 (Tex. 1996) ("[T]he appellate court may consider other [summary judgment] grounds that the movant preserved for review and trial court did not rule on in

15

We cannot agree that the trial court's order as to EM is authorized by § 11.054. That statute, entitled "Court Supervision of Winding Up Process," explicitly states that the powers it grants are "[s]ubject to the other provisions of this code . . . ." *Id.* § 11.054. In those other provisions, "winding up" is defined as "the process of winding up the business and affairs of a domestic entity as a result of the occurrence of an event requiring winding up." *Id.* § 11.001(8). "An event requiring winding up" of a domestic entity includes "a decree by a court requiring the winding up, dissolution, or termination of the domestic entity, rendered under this code or other law." *Id.* § 11.051(5). But although § 11.054 allows a court to "supervise" the winding up of a corporation and to "appoint a person to carry out" that process, it does not explicitly allow a trial court to "*requir[e]* the winding up, dissolution, or termination" of a corporation. *See id.* §§ 11.051 (emphasis added), 11.054(a), (b).

Further, although § 11.054 allows a trial court to "make any other order, direction, or inquiry that the circumstances may require," that authority is also "[s]ubject to the other provisions" of the business organizations code. *See id.* § 11.054(3). We do not believe § 11.054(3) was intended to serve as a judicial *carte blanche* that would allow a trial court unfettered authority to take actions—such as the rendition of an order requiring the involuntary termination of a corporation—that are not explicitly permitted elsewhere in the code. Instead, we construe § 11.054(3) as granting the trial court broad authority to make appropriate orders in cases where "[a]n event requiring winding up" has already occurred. *See id.* §§ 11.054(3); *see also id.* § 11.051.[12]

---

the interest of judicial economy."); *Thomas v. Farris*, 175 S.W.3d 896, 898 (Tex. App.—Texarkana 2005, pet. denied) ("An appellate court may affirm the judgment on any grounds properly raised before the trial court, even when the trial court grants summary judgment specifically on fewer than all grounds asserted.").

[12] Bubak did not specify any "event requiring winding up" of the Edde entities, either in his petition

We conclude that the trial court erred by ordering the involuntary termination and winding up of EM, a corporation. Tucker's issues raising this argument are sustained. Moreover, because Bubak's pleadings do not offer any legally cognizable basis for the trial court to order the involuntary termination and winding up of a corporation, we render judgment denying Bubak's requests for the winding up and dissolution of EM.

## F.     Summary Judgment Merits

Tucker's remaining issues address the merits of the summary judgment ruling. We will address these issues only insofar as they concern the entities other than EM which were affected by the trial court's July 16 order—i.e., EV, EDS, and Titan.

### 1.     Standard of Review

The denial of summary judgment is reviewed de novo. *Neely v. Wilson*, 418 S.W.3d 52, 59 (Tex. 2013). A movant for traditional summary judgment has the burden to establish that no genuine issue of a material fact exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Amedisys, Inc. v. Kingwood Home Health Care, LLC*, 437 S.W.3d 507, 511 (Tex. 2014). A fact issue exists if there is more than a scintilla of probative evidence to support each element of the plaintiff's claim. *Neely*, 418 S.W.3d at 59. We review the summary judgment evidence in the light most favorable to the non-movant, indulging every reasonable inference and resolving any doubts against the motion. *Buck v. Palmer*, 381 S.W.3d 525, 527 (Tex. 2012) (per curiam); *City of Keller v. Wilson*, 168 S.W.3d 802, 824 (Tex. 2005).

### 2.     Analysis

By the fourth issue in his first appeal and the fifth issue in his second appeal,

---

or in his summary judgment motion.

17

Tucker contends that summary judgment was improper because Bubak did not produce any competent summary judgment evidence.  By the first issue in his first appeal, Tucker contends that summary judgment was improper because he produced "extensive evidence reflecting Bubak's wrongful conduct."

Bubak attached three items to his motion for partial summary judgment:  (1) an affidavit in which Bubak attested to the truth of the factual statements made in the motion; (2) a series of emails between Tucker and Bubak; and (3) a transcript from a temporary injunction hearing on October 5, 2017, at which Tucker and Bubak testified, along with exhibits from the hearing.  Tucker argues that Bubak's affidavit cannot be considered as summary judgment evidence because it merely verified allegations made in the motion and did not independently assert any facts.  *See City of Hous. v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979) ("Pleadings do not constitute summary judgment proof.").  He contends that the email exchange between Tucker and Bubak is not competent summary judgment evidence because it was not authenticated.  *See* TEX. R. EVID. 901(a).  And he argues that the temporary injunction hearing transcript cannot be considered because Bubak did not, in his summary judgment motion, direct the trial court to any particular portion of the 202-page document.[13]

As noted, § 11.314 of the Texas Business Organizations Code allows a trial court to "order the winding up and termination" of a partnership or limited liability company if the court finds that "the economic purpose of the entity is likely to be unreasonably frustrated." TEX. BUS. ORGS. CODE ANN. § 11.314(1).  Bubak alleged this ground for relief,

---

[13] Tucker further contends by these issues that the Asset List was not competent summary judgment evidence because it was not authenticated.  We have already held, however, that the Asset List was not submitted as evidence supporting any of the alleged grounds for summary judgment.

among others, in his summary judgment motion.  As the basis for its summary judgment order, the trial court found that "there is no genuine issue as to any material fact" that "the "economic purposes of the entities is likely to be frustrated."[14]

Tucker argued in response to the summary judgment motion that his "extensive summary judgment evidence shows that there is, at a very minimum, a question for the jury as to whether Bubak breached his agreements and fiduciary duties regarding the destruction of Edde Drilling and the concurrent establishment of SDS, a direct competitor of Edde Drilling."  But Bubak did not move for summary judgment on Tucker's breach of contract and breach of fiduciary duty counterclaims; those claims remain pending in the severed proceeding.  And crucially, Tucker's summary judgment response did not challenge Bubak's assertion that the "economic purpose" of EV, EDS, and Titan "is likely to be unreasonably frustrated" due to the ongoing disagreements between the parties as to how the companies are managed.

Our inquiry here is limited to the question of whether the trial court erred in rendering summary judgment on grounds that the "economic purpose" of EV, EDS, and Titan "is likely to be unreasonably frustrated."  The business organizations code plainly permits a trial court to order winding up and dissolution if it makes this finding.  TEX. BUS. ORGS. CODE ANN. § 11.314(1).  Here, Bubak alleged these grounds in his summary judgment motion but Tucker did not deny them in his response.  We therefore cannot reverse the judgment on this basis as Tucker urges.  See TEX. R. CIV. P. 166a(c) ("Issues not expressly presented to the trial court by written motion, answer or other response

_____

[14] The trial court's order did not specify that the likely frustration would be "unreasonabl[e]," as required for a winding up order under § 11.314(1).  See TEX. BUS. ORGS. CODE ANN. § 11.314(1).  Tucker does not take issue with this oversight.  In any event, given the state of the pleadings and arguments, it is clear that § 11.314(1) was the basis for the trial court's order.

shall not be considered on appeal as grounds for reversal.").

Further, in light of the fact that Tucker never disputed Bubak's § 11.314(1) allegation, Bubak was arguably under no obligation to produce any evidence to support it. *See* TEX. R. CIV. P. 166a(a) (noting that a plaintiff may "move with or without supporting affidavits for a summary judgment in his favor"). And even if all of Bubak's summary judgment evidence is considered incompetent, the evidence attached to Tucker's summary judgment response constituted more than a scintilla to show that the "economic purpose" of EV, EDS, and Titan "is likely to be unreasonably frustrated." For example, Tucker attached deposition testimony by Bubak in which he stated that the Edde companies suffered from "[d]ysfunctional management" and elaborated:

> [I]t started some years back, but we can't—you know, Troy and I can't work together on how best to work with the company, expand the·company, if I have certain ideas that I thought would help the company schedule more, and he disagrees.· And·then we got into issues with, you know, the turnkey process and how best to manage it, the wheels fell off, couldn't get the wheels back on.

> We went into mediation, tried that, came out with some answers that I didn't think were in the best interest of the overall health of the company but that may work to at least get the wheels back on.

> That didn't last very long, and the wheels fell off again.· And it just seemed like there just wasn't any way that we were ever going to be able to—to get the wheels back on.

Although Tucker disagrees that the companies should be wound up and terminated, he has never disputed that the "economic purpose" of the entities "is likely to be unreasonably frustrated," and the evidence supports that conclusion. Accordingly, the trial court did not err by granting summary judgment ordering the winding up and dissolution of EV, EDS, and Titan. Tucker's issues concerning the merits of the summary judgment motion are overruled.

20

### III. Conclusion

We reverse the trial court's July 16, 2018 judgment as to EM, and we render judgment denying Bubak's petition for winding up and termination of that corporation under the business organizations code. The remainder of the judgment is affirmed.


DORI CONTRERAS
Chief Justice

Delivered and filed the
20th day of June, 2019.